## Allstate Insurance Co. v. Gravine

*Joseph Grady and James A. Doherty Jr.,* for plaintiff.

*Paul R. Mazzoni,* for defendants Joseph Caporali and Ruth Caporali.

*Eugene D. McGurk and Mark C. Cavanaugh,* for defendants Thomas Gravine III, Thomas Gravine Jr., Monica Gravine, Thomas Gravine and Marie Gravine.

*Edward S. Neyhart,* for defendant Belinda Misko.

MUNLEY, *J.,* December 15, 1988 — Plaintiff, Allstate Insurance Company, brought this declaratory judgment action pursuant to the provisions of the Declaratory Judgment Act, Act of July 9, 1986, P.L. 586, 42 Pa.C.S. §7531 et seq., against defendants to determine whether it owes a defense and coverage under two insurance policies it issued to defendant Joseph Caporali. The underlying matter which spawned the present action is a complaint in trespass filed by the parents of Thomas Gravine III, on his behalf, against the estate of John Caporali, Belinda Misko, and the City of Carbondale. (Lackawanna County no. 83 Civil 2300).

On July 31, 1981, John Caporali, a 14-year-old youth, was operating a motorbike with Thomas Gravine III, age 14 as his passenger, in the City of Carbondale, when an accident occured involving a vehicle operated by Belinda Misko at the intersection of 42d Street and Green Street. John Caporali died and young Gravine suffered serious injuries as a result of the collision with the Misko vehicle.

The motorbike involved in the fatal mishap was owned by Joseph Caporali, the father of the deceased youth. The Caporalis had two policies of insurance at the time of the incident; a homeown-

er's policy and an automobile policy with plaintiff Allstate Insurance Company. The above-mentioned lawsuit filed by the Gravine family against the estate of John Caporali et al., was then subsequently docketed in our court. The complaint contained, inter alia, a cause of action against Joseph and Ruth Caporali, natural parents of John Caporali, deceased, upon claims for negligent supervision of their minor child. The Caporalis promptly notified their homeowner's and automobile liability insurer, Allstate Insurance Company, of the lawsuit. The insurance carrier then filed the present suit praying we declare that neither their general liability policy nor their automobile liability policy cover the claims brought by the Gravines and, consequently, request permission to withdraw its defense of the Caporalis.

We are initially called upon to determine whether Allstate has a duty to defend under the general liability policy it issued to the Caporalis.

"An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleading . . .

"[I]n determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment . . . the language of the policy must be construed together to determine the insurer's obligation." *Gene's Restaurant Inc. v. Nationwide Insurance Co.,* 519 Pa. 306, 548 A.2d 246 (1988). (citations omitted) In *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983), the

Pennsylvania Supreme Court, per Justice Roberts, clearly set forth the standard for interpreting insurance contracts:

"The principles governing our interpretation of a contract of insurance are familiar and well settled. The task of interpreting a contract is generally performed by a court rather than by a jury. (citations omitted) The goal of that task is, or course, to ascertain the intent of the parties as manifested by the language of the written instrument.

"Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. (citation omitted) Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Standard Venetian Blind Co., supra.*

In both the original and amended complaints filed to 83 Civil 2300, it is alleged that the parents of John Caporali, deceased, failed to properly supervise and control their minor son. Plaintiff Allstate contends the following exclusion applies to the claims brought by the Gravines:

"Exclusions — Losses we do not cover —

"(5) We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of a motorized land vehicle or trailer." Allstate contends that because John Caporali was operating the motorbike at the time of the accident, the above exclusion applied. For reasons set forth below, we disagree.

From a review of the pleadings in the instant case it is clear that the Gravines' complaint contains two separate and distinct causes of action against the Caporalis based upon separate and

distinct facts. One cause of action has been instituted against the estate of John Caporali for the youths' alleged negligent operation of the dirt bike. A second cause of action against the parents of John Caporali, individually, charges the parents with negligent supervision over their minor son.

The issue of parental care or accountable conduct arising from negligent supervision by parents is simply a diverse basis for alleged liability and is non-auto related. It is conduct primarily concerned with the Caporalis, as parents, failing to exercise reasonable care and control over their minor son. See *Erie Insurance Exchange v. Transamerica Insurance Co.*, 516 Pa. 574, 533 A.2d 1363 (1987), where the Supreme Court discussed a homeowners' insurer's duty to defend claims of negligent supervision despite exclusion in a homeowners policy for injuries occurring out of the use of a motor vehicle. We also found guidance in the reasoning and conclusion set forth in the case of *United States Fidelity and Guaranty Company v. State Farm Mutual Automobile Insurance Company*, 107 Ill. App. 3d 190, 437 N.E. 2d 633 (1982), where a four-year-old child was injured while exiting a car driven by an employee of a daycare center where she attended. The parents of the minor brought an action against the daycare center and its employee, alleging, inter alia, failure to retain sufficient control over the children, negligent hiring of personnel, and negligent supervision of the children. The homeowner's insurance company, as here, instituted a declaratory-judgment action to determine coverage. The exclusion in the Illinois policy is similar to the one in the present matter. It excluded from coverage injuries arising out of the "ownership, maintenance, operation, use, loading or unloading of an automobile." The Illinois Court said that "the complaint alleges

negligent acts which are potentially within the coverage of the policy, such as the failure to adequately supervise . . . These alleged acts are separate and distinct from any allegations relating to the negligent operation of the automobile." 437 N.E. 2d at 666.

We find the *Fidelity* analysis is persuasive in the matter before us; the charge of negligent supervision is not only set out separately in the averments but its gist is predicated on the parent's conduct, failing to supervise their minor child. Juxtaposed, where the liability of the insured arises from negligent acts which constitutes non-auto related conduct, the policy should be applicable regardless of the automobile exclusion. Consequently, since the underlying complaint filed by the injured party avers acts which are potentially within the coverage of the policy, i.e. negligent supervision, Allstate is duty-bound to defend the Caporalis in the underlying action. See *Cadwallader v. New Amsterdam Casualty Company*, 396 Pa. 582, 152 A.2d 484 (1959); *Gedeon v. State Farm Mutual Automobile Insurance Company*, 410 Pa. 55, 188 A.2d 320 (1963).

As discussed previously, Allstate contends they have no duty to defend the Caporalis in the underlying lawsuit based on the exclusion for bodily injury arising out of maintenance, use, operation, loading or unloading of a motorized land vehicle. The homeowners policy in question contains an exception to the exclusion relied upon by Allstate. The exception reads, in pertinent part, as follows:

"[H]owever, this exclusion does not apply to:

"(b) a motorized land vehicle not owned by an insured when used off the residence premises and which is designed principally for recreational use of public roads . . ."

Allstate maintains that the above-quoted language is plain and unambiguous and clearly disallows

coverage in the underlying action. Considering the extent of litigation involving the construction of contractual terms and statutory language, we are of the opinion that what is clear and unambiguous to one individual is not necessarily so to another. In the matter sub judice, we agree with defendants that the exception is phrased in ambiguous language. Specifically, the phrase "not owned by an insured when used off the residence premises" causes us great concern.

The test we are to apply in determining whether the language employed by Allstate is ambiguous states:

"Under Pennsylvania law, a provision of a policy is ambiguous if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning and if alternative or more precise language, if used, would have put the meaning of the language beyond a reasonable question." *Disanto v. Enstrom Helicopter Corp.*, 489 F. Supp. 1252, 1359 (E.D. Pa. 1980). We find, in applying the test stated above, that reasonably intelligent persons could certainly differ as to what Allstate meant by the exception at issue here. The court is faced with a dilemma in determining if Allstate intended that the exception would apply when the motorized land vehicle was not owned by the particular insured person driving the motor vehicle at the time of the accident or not owned by any insured. When one views the exception and notes the phrase "an insured" is modified by the phrase "when used off the residence premises," reasonable persons may believe that Allstate was referring to the insured who was operating the vehicle at the time it was being used off the residence premises. We agree with defendants that if the plain meaning of the above exception is that the

policy excepts from their exclusion situations where the vehicle was not owned by the insured who was operating the vehicle at the time, (John Caporali, deceased), then the claim falls within that exception and Allstate is under a duty to defend. Consequently, we find an ambiguity does exist and, therefore, we must interpret the language against Allstate and in favor of its insured. *Cadwallader v. New Amsterdam Casualty Company, supra;* see also, *Erie Insurance Exchange, supra.*

Finally, we hold that Allstate is obligated to defend the Caporalis based upon the reasonable expectation of Mr. Caporali, the named insured in the Allstate policies. The Pennsylvania Supreme Court recognized the adhesional nature of insurance transactions in *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), wherein the court stated:

"The reasonable expectation of the insured is the focal point of the insurance transaction involved here. E.g., *Beckham v. Travelers Insurance Co.*, 424 Pa. 107, 117-8, 225 A.2d 532, 537 (1967). Courts should be concerned with assuring that the insurance-purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid. Courts should also keep alert to the fact that the expectations of the insured are in large measure created by the insurance industry itself. Through the use of lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer

to rely upon the oral representations of the insurance agent. Such representations may or may not accurately reflect the contents of the written document and therefore the insurer is often in a position to reap the benefit of the insured's lack of understanding of the transaction." *Collister* at 594, 388 A.2d at 1353.

Joseph Caporali, the named insured and father of the deceased, testified that he purchased the motorbike approximately one month prior to renewing his insurance coverage with Allstate. He stated that he knew his Allstate agent for years and it was this agent who handled all his insurance needs. The testimony revealed Caporali did bring the matter of the motorbike acquisition to the attention of the Allstate representative, yet the agent took no affirmative action to insure it under a separate policy of insurance. Mr. Caporali testified that he expected that any claims present, resulting from operations of the motorbike, would be covered and protected under his Allstate insurance plans. Not only did this consumer obtain two separate policies of insurance from Allstate, one for general family liability under a homeowner contract and one for coverage on his automobile, but he discussed with his Allstate agent, Mr. Sylvester, the matter of the motorbike. We find it significant that this testimony went uncontested.

Analyzing the totality of the transaction, we find the doctrine of reasonable expectation is applicable in these circumstances. This father, who suffered a tragic loss with the death of his son, was straightforward and credible. The testimony of Mr. Caporali disclosed a prudent individual who wanted his family protected with a comprehensive plan of insurance designed by the plaintiff Allstate Insurance Company. We believe he took all reasonable steps necessary to realize this goal. Through his dealings with

Allstate, the insured reasonably expected that he and his family were secure in good hands. He placed great reliance on his relationship with Allstate and to deny him the protection he sought, in the circumstances here presented, would be unreasonable and violative of the contract of adhesion doctrine.

Inasmuch as we found Allstate Insurance Company has a duty under the homeowners policy to defend the underlying action, we deem it unnecessary to treat the arguments raised relating to the automobile policy.

Accordingly, we shall enter an appropriate order denying Allstate's petition for declaratory judgment.

## ORDER

Now, December 15, 1988, plaintiff's application for a declaratory judgment is hereby denied for the reasons set forth in the accompanying opinion. The court finds that the Allstate Insurance Company's homeowners liability policy does cover the July 31, 1981 accident. Therefore, Allstate Insurance Company has an obligation and duty to defend the defendant Caporalis in the lawsuit commenced as a result of the aforementioned accident.