Michael WILCHA and Sharon Wilcha, Individually and as Parents and Natural Guardians of Michael Wilcha, Jr., Appellants

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY and Phyllis Arnold and Kenneth Arnold, Appellees.

Michael Wilcha and Sharon Wilcha, Individually and as Parents and Natural Guardians of Michael Wilcha, Jr., Appellees

v.

Nationwide Mutual Fire Insurance Company, Appellant

v.

Phyllis Arnold and Kenneth Arnold.

Superior Court of Pennsylvania.

Submitted Aug. 30, 2005.

Filed Nov. 22, 2005.

Edward A. Monsky, Scranton, for Wilcha.

Kevin M. Higgins, Scranton, for Arnold, Phyllis.

Daniel E. Cummins, Scranto, for Arnold, Phyllis and Kenneth.

Gerald A. Connor, Scranton, for Nationwide.

Before: HUDOCK, BOWES and BECK, JJ.

OPINION BY HUDOCK, J.:

¶ 1 Michael and Sharon Wilcha (the Wilchas) and Nationwide Mutual Fire Insurance Company (Nationwide) have filed consolidated cross-appeals to the trial court's order finding that Nationwide had a duty to defend in only one of the above actions. The Wilchas contend that Nationwide has a duty to defend both actions, while Nationwide asserts that it has no duty to defend in either action. We hold that Nationwide does not have a duty to defend the Wilchas in either action.

¶ 2 The pertinent facts and procedural history are not disputed. The Wilchas were insured under a homeowner's policy issued by Nationwide, which was in effect on June 3, 2002. On that date, the Wilchas' thirteen-year-old son, Michael Wilcha, Jr. (Michael Jr.), was operating a 1999 Honda CR–80 dirt bike on Mine Fire Road in Carbondale when it collided with a vehicle driven by Phyllis Arnold (Mrs. Arnold) at or near the intersection of Mine Fire Road and Erie Street. Two lawsuits arose from this collision. In the first, Michael and Sharon Wilcha, as parents and natural guardians of Michael Jr., instituted suit against Mrs. Arnold for injuries allegedly sustained by Michael Jr.

¶ 3 In her answer, Mrs. Arnold essentially denied the Wilchas' allegations, and, in her new matter, raised affirmative defenses to the complaint and claims that Michael Jr. was negligent. In her additional new matter pursuant to Pa.R.C.P. 2252(d), Mrs. Arnold joined Michael and Sharon Wilcha as additional defendants. She then averred that the "negligence, carelessness and recklessness of Michael and Sharon Wilcha was a proximate cause of the accident and the injuries allegedly sustained" by Michael Jr. Additional New Matter, 5/13/03, at ¶ 34. More specifically, Mrs. Arnold alleged that the "negligence, carelessness and recklessness of" Michael and Sharon Wilcha consisted of negligently: 1) entrusting the dirt bike to their son; 2) failing to supervise their son in his use and operation of the dirt bike; 3) failing to properly train their son or secure proper training on the proper use and operation of the dirt bike; 4) failing to advise their son of the applicable provisions of the Pennsylvania Vehicle Code; 5) failing to exercise control over their son and/or his use of a dangerous instrumentality, when they knew, or in the exercise of due care, should have known that injury to persons

in the public would be the direct and proximate result of their failure to exercise such control; and 6) permitting their son to have and use a dangerous instrumentality. *Id.* at ¶ 35. In addition, Mrs. Arnold averred that the Wilchas were negligent, careless and reckless in "then and there failing to exercise due care under all of the circumstances." *Id.*

¶ 4 On the same date she responded to the Wilchas' complaint, Mrs. Arnold, along with her husband, Kenneth (the Arnolds), instituted a personal injury action against the Wilchas. In this action, the Arnolds alleged negligent operation of the dirt bike by Michael Jr. The complaint also contained identical claims of negligence as to the Wilchas as was raised in her additional new matter in the Wilchas' lawsuit.

¶ 5 The Wilchas submitted both claims to Nationwide under their homeowners' policy. The policy provided the following with regard to Section II—Liability Coverages:

## COVERAGE E—PERSONAL LIABILITY

We will pay damages the **insured** is legally obligated to pay due to an **occurrence**.

We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

Elite II Homeowners Policy, 6/25/03, at 12. Nationwide filed an answer and new matter to the declaratory judgment complaint, in which it maintained that the described loss was excluded from coverage pursuant to the following exclusion from personal liability coverage:

## COVERAGE E—PERSONAL LIABILITY

... [does] not apply to **bodily injury** or **property damage**:

\* . \* \* \* \* \*

(e) arising out of the ownership, maintenance, or use of:

\* \* \* \* \* \*

(2) a **motor vehicle** owned or operated by, or rented or loaned to an **insured**.

*Id.* at 13. After the pleadings were closed, Nationwide filed a motion for judgment on the pleadings and the Wilchas, joined by the Arnolds, filed cross-motions for judgment on the pleadings. Following the submission of briefs and oral argument, the trial court issued its decision in which it concluded that Nationwide was only obligated to provide a defense to the Wilchas in their suit against Mrs. Arnold, even though identical claims of negligence were raised against the Wilchas in both actions. Both Nationwide and the Wilchas have filed an appeal to this Court, and they were consolidated. In their appeal, the Wilchas raise the following issue:

Whether the Court below erred in issuing an inconsistent and erroneous decision, in that it correctly required Nationwide to defend [them in the suit they filed against Mrs. Arnold], while not requiring it to defend them in [the Arnolds' suit], even though the allegations against [them] were essentially identical in both underlying actions?

The Wilchas' Brief at 4. Nationwide raises the following issue in its appeal:

When [sic] the injuries and damages complained of [in both actions] resulted from the use of a motor vehicle and, if so, whether liability coverage and defense of the same are properly excluded from [Nationwide's] Homeowner's Policy?

Nationwide's Brief at 1. We will address these claims together.

¶ 6 As this Court has summarized:

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1034[.] Thus, in reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court is based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only where the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Consulting Engineers, Inc. v. Insurance Company of North America*, 710 A.2d 82, 83–84 (Pa.Super.1998) (citations and quotation marks omitted).

¶ 7 "An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions." *Erie Insurance Exchange v. Claypoole*, 449 Pa.Super. 142, 673 A.2d 348, 355 (1996) (*en banc*). "In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend." *Id.* As this Court has summarized:

The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. Moreover, the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent. Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. In order to determine whether a claim may potentially come within the coverage of the policy, we must first ascertain the scope of the insurance coverage and then analyze the allegations in the complaint.

*Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208, 1210 (1994) (citations and quotation marks omitted). "This duty to defend, however, is not activated by every allegation raised against the insured." *Claypoole*, 673 A.2d at 355. "[O]nly allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured." *Id.*

¶ 8 Thus, the express language of the insurance policy must be reviewed. The standards applied when doing so are well settled. As our Supreme Court has summarized:

Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense. To determine whether [the insurer] has met its

burden of proof we rely on well-settled principles of contract interpretation.

The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. .

*Madison Construction Company v. Harleysville Mutual Insurance Company*, 557 Pa. 595, 605–06, 735 A.2d 100, 106 (1999) (citations and quotation marks omitted).

¶ 9 In the present case, the parties do not dispute that the homeowner's policy excludes coverage for accidents involving motor vehicles and that Michael Jr. was using and/or operating a "motor vehicle," as that term is defined in the homeowner's policy, when the accident occurred. Thus, the issue to be decided in this case is whether the claims of negligent entrustment and supervision directed toward the Wilchas triggers a duty to defend on the part of Nationwide. We conclude that it does not.

¶ 10 In *Erie Insurance Exchange v. Transamerica Insurance Company*, 516 Pa. 574, 533 A.2d 1363 (1987), our Supreme Court was faced with the question of whether the insurer under an automobile liability policy (Erie) or the insurer under a homeowner's policy (Transamerica) had the duty to defend and to pay any damages recovered in two actions brought against the insured that arose out of a "mishap" in which the insured's three-and-one-half-year-old son "unwittingly" set a visitor's car in motion. *Erie*, 516 Pa. at 577, 533 A.2d at 1365. As our Supreme Court summarized:

On March 19, 1976, Landis Robinson, a life insurance agent in the employ of New York Life Insurance Company, Inc., drove to the home of [Bobby and Joyce Gilbert] located on Broadhead Street in the City of Pittsburgh. Ms. Robinson parked her automobile on Broadhead Street directly across from the Gilberts' residence. Broadhead Street is a hill and the Robinson vehicle was facing downhill.

Ms. Robinson was admitted to the Gilberts' home where she commenced a conversation with Joyce Gilbert. While Ms. Robinson and Mrs. Gilbert were talking, Ms. Robinson permitted Erin Gilbert to gain possession of the keys to her automobile. The youngster left the house, taking the car keys with him [sic]. Young Erin Gilbert apparently was able to enter into the unattended Robinson vehicle and somehow set the car in motion. [From the stipulation of facts it is unclear whether the automobile's motor was started and running when it was set in motion by Erin Gilbert.] Once in motion the automobile rolled down Broadhead Street. The runaway vehicle struck two children as it travelled down the hill. One of the children (Ronald Craighead, Jr.) was injured by the vehi-

**1260**

cle; the other child (Kevin J. Robinson) was killed. Both parties in this appeal acknowledge that the incident occurred away from the premises of the Gilberts.

At the time of the accident the Gilberts owned an automobile which was insured under an automobile liability policy issued by [Erie]. The Gilberts were also insured under a homeowner's policy issued by [Transamerica]. Transamerica does not dispute that except for a policy exclusion relating to claims arising out of the use of motor vehicles ... there would be coverage under its policy.

Along with others, the Gilberts were sued by the parties who suffered damages because of the injuries and death that were a result of the vehicle set in motion by young Erin Gilbert. After the Gilberts executed a reservation of rights agreement, [Erie] caused appearances to be entered on their behalf in the lawsuits filed against [the Gilberts] and proceeded to defend each action. [Transamerica] refused to enter an appearance for the Gilberts and declined to participate in any way in the litigation.

In both the personal injury action and the death claim a settlement was negotiated on behalf of the Gilberts. [Each insurer paid one-half of the *pro rata* share of the settlements. Each insurer incurred expenses for investigation, costs and legal fees.] [In its declaratory judgment action] Erie takes the position that the entire cost of defense and the duty to pay the whole settlement sum in each action is the obligation of [Transamerica]. Transamerica, on the other hand, argues that since the alleged injuries and damages arose out of the use of an automobile, the exclusion provisions

of the homeowner's policy specifically exclude coverage thereunder.

*Erie,* 516 Pa. at 578–79, 533 A.2d at 1365–66 (footnotes omitted).[1] The trial court had ruled that Erie was solely responsible for coverage under the automobile policy issued to the insureds. A divided panel of this Court affirmed this determination. *Erie Insurance Exchange v. Transamerica Insurance Company,* 352 Pa.Super. 78, 507 A.2d 389 (1986).

¶ 11 In addressing the issue presented, our Supreme Court first stated that the question of whether the automobile liability insurer or homeowner's insurer was responsible for the payment of the settlement sum and the costs of defending the suits against the Gilberts necessarily begins with the consideration of the relevant provisions of the respective insurance policies. As succinctly stated by the high court, "[u]nder the Erie automobile policy, *coverage is provided* when the accident causing damages arises out of *'the ownership, maintenance or use of the automobile[,]' while under* ] the Transamerica homeowner's policy, *coverage is excluded* where the damages arise out of *'the ownership, maintenance, operation, use, loading or unloading of any motor vehicle* owned or operated by ... any Insured.' " *Erie,* 516 Pa. at 580, 533 A.2d at 1366.

¶ 12 Our Supreme Court then determined that "[c]overage under the Erie policy and exclusion from coverage under the Transamerica policy turns on whether the accident ... arose out of *'use'* of the automobile." *Id.,* 516 Pa. at 581, 533 A.2d at 1367. The high court then considered the following arguments of the parties:

In support of its position that the accident is not covered by the automobile policy, Erie argues that the actions of the 3½ year old child in setting the car in

---

1. Our Supreme Court identified Erin as a boy. In this Court's decision, we cited the trial court's recitation of the facts in which it stated that Erin was the daughter of the Gilberts.

motion is not "use" of an automobile. Erie further argues that the gist of the underlying actions against the Gilberts is the Gilberts' failure to control their child. [Transamerica] counters Erie's argument by citing the lower court decision and arguing the word "use" has a broad enough meaning to cover the actions of young Erin Gilbert in setting the Robinson vehicle in motion. Transamerica also contends that the underlying complaints filed against the Gilberts allege causes of action founded on negligent entrustment. Transamerica's argument continues that since an essential element of negligent entrustment is use of the automobile as the proximate cause of the injury, and since it is impossible to separate negligent entrustment from use, coverage for the accident in this case is provided under the Erie automobile policy and excluded under the homeowner's policy.

*Id.* Our Supreme Court opined that the term "use" as employed in both insurance policies at issue denoted "an element of rational, purposeful conduct" rather than "mere movement of a vehicle." *Id.* Upon further consideration of the breadth of the term "use", our Supreme Court ultimately concluded that "it is stretching policy construction beyond reasonable bounds to hold that the word 'use' includes the maneuvers of a 3½ year old child that happen to set a vehicle in motion." *Erie*, 516 Pa. at 581–82, 533 A.2d at 1367. The high court further explained:

> Considering the setting, a 3½ year old child (Erin Gilbert in this case) is not capable of "using" an automobile in a rational, purposeful sense within the meaning of the relevant policy provisions. The unwitting actions of a 3½ year old child in putting an automobile in motion is not "use["] of an automobile and, is not one of the risks contemplated by the Erie policy or excluded by the Transamerica policy. For one to "use" an automobile in the sense contemplated by the pertinent provisions of the insurance policies in question, the alleged "user" should at least know and understand the uses to which an automobile, as an automobile, may be put. A 3½ year old, such as Erin Gilbert in this case, does not know how to "use" an automobile.

*Id.*, 516 Pa. at 582, 533 A.2d at 1367–68 (footnote omitted). Our Supreme Court in *Erie* held, therefore, that the actions of Erin Gilbert "in gaining access to the unoccupied Robinson automobile and setting it in motion does not constitute 'use' of that automobile within the contemplation of the relevant provisions of the policies in question. Accordingly, sole coverage for the underlying incident in this case is under the Transamerica homeowner's policy." *Id.*, 516 Pa. at 583, 533 A.2d at 1368 (footnote omitted).

¶ 13 Given its holding that the minor did not "use" the vehicle, our Supreme Court in *Erie* stated it did not "reach the issue raised by [Transamerica] of whether there is coverage under either policy for 'negligent entrustment.'" *Erie*, 516 Pa. at 583 n. 7, 533 A.2d at 1368 n. 7.[2] Although this Court reached the opposite decision with regard to the "use" of the vehicle by Erin Gilbert in *Erie*, this Court also addressed the "precise issue" of "whether an insurer,

**2.** The high court further stated that there was no evidence in the case that the Gilberts negligently entrusted the vehicle to their minor son. While our Supreme Court also addressed the issue of which insurer had a duty to defend the remaining direct claims of neg-

ligence, including negligent supervision, raised against the Gilberts, and did determine that this duty fell upon Transamerica under its homeowner's policy, this conclusion, as shall be discussed *infra*, does not affect our ultimate decision in this case.

under a homeowner's policy of insurance, is required to provide a defense and coverage to an insured who is sued for alleged negligent entrustment of an automobile, in the face of a stated policy exception which excludes claims arising out of the use of motor vehicles owned by the insured." *Erie Insurance Exchange v. Transamerica Insurance Company,* 507 A.2d at 393–94. Because there is no dispute in the present case that thirteen-year-old Michael Jr. "used" the dirt bike in question, this Court's discussion of this issue in *Erie* warrants further consideration.

¶ 14 In *Erie,* this Court identified three different ways that decisions of our sister states have dealt with this issue. The first, which this Court identified as "dovetailing":

> This theory simply holds that any one occurrence can only be covered by either the automobile or the homeowner's policy—but not both. That mutually exclusive effect is the result of the exclusionary clause of the homeowner's policy acting as the mirror image of the inclusionary clause of the automobile policy. The two coverages dovetail, the one filling the gaps created by the other. Automobile-related occurrences are then within the sole province of the automobile policy. The outcome of this rationale would be to exclude homeowner's policy coverage for negligent entrustment of an automobile.

*Erie,* 507 A.2d at 394 (citation omitted). We then noted, however, that this approach was not available to us because Pennsylvania precedent had held "that a homeowner's policy and an automobile policy are not necessarily mutually exclusive." *Id.*

¶ 15 This Court then noted that the two remaining ways of treating the issue before it involved "an analysis of the nature of the negligent entrustment tort." *Id.* As this Court summarized:

> One views the negligent entrustment of the automobile as being separate from the use of the vehicle, with the entrustment being the primary negligence, while the other sees the use [of the vehicle] as an integral part of the tort of negligent entrustment.

*Id.* We then discussed cases from various jurisdictions that chose to follow either theory. *See id.* After considering these decisions, when coupled with the definition of the tort of negligent entrustment, we concluded that "[c]ases adopting the instrumentality [*i.e.,* the use of the vehicle is integral to the tort of negligent entrustment,] are both more numerous than the other line and reflect the trend, as they tend to be the more recent cases. We find this line of cases, rejecting coverage, to be more persuasive." *Erie,* 507 A.2d at 397. This Court had cited the following language from *Cooter v. State Farm Fire and Casualty Company,* 344 So.2d 496, 498 (Al.1977), which we find particularly telling:

> The fatal weakness of the appellants' contention for coverage lies in its failure to acknowledge one of the elements essential to recovery for negligent entrustment—the negligent operation of the motor vehicle....
>
> The plain wording of the exclusionary provision reveals the deficiency in this rationale. While liability (apart from coverage) for negligent entrustment is not conditioned upon the entrustor's ownership or use of the vehicle, negligent use by the one to whom it is entrusted is essential to recovery. It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by the entrustee—that is missing in the rationale of

those cases upholding coverage. Taken literally, this line of reasoning—that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability—the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have already observed, this does not comport with the elements that make up this tort concept of negligent entrustment.

*Erie,* 507 A.2d at 396. Thus, we held that Transamerica's homeowner policy did not give rise to coverage for the negligent entrustment of an automobile.

¶ 16 A review of more recent case law from other states reveals that the dichotomy in the treatment of the tort of negligent entrustment under a homeowner's policy continues to exist. *See e.g., American Family Mutual Insurance Company v. White,* 204 Ariz. 500, 65 P.3d 449 (Ct. App.2003) (finding that a claim of negligent entrustment or supervision could not exist apart from the excluded aggravated assault on the part of insureds' son); *Belmonte v. Employers Insurance Company,* 83 Cal.App.4th 430, 99 Cal.Rptr.2d 661 (2000) (holding that insured's act of permitting access to key was conduct separate only in fact that it preceded collision; it cannot be disassociated from the use of the vehicle itself); *compare Crist v. Hunan*

*Palace, Inc.,* 277 Kan. 706, 89 P.3d 573 (2004) (holding automobile exclusion in general liability policy did not apply because plaintiff's claim of negligent supervision and training was a separate and distinct theory of recovery from the use of an automobile); *GRE Insurance Group v. Reed,* 1999 WL 548498, 1999 Tenn.App. Lexis 440 (Tenn.Ct.App.1999) (explaining that vehicle owner's liability for negligent entrustment did not rest on imputed negligence, but was based on his own negligence in entrusting the automobile to an incompetent driver); *Grinnell Mutual Reinsurance Company v. Center Mutual Insurance Company,* 658 N.W.2d 363 (N.D. 2003) (holding that because there were motor vehicle-related acts of negligence and non-motor vehicle-related acts of negligence both involved in the same accident, concurrent coverage under both the auto policy and the farm policy existed).[3]

¶ 17 After study, however, we conclude that this Court's decision in *Erie* comports with Pennsylvania precedent. *See Pulleyn v. Cavalier Insurance Corporation,* 351 Pa.Super. 347, 505 A.2d 1016, 1020 (1986) (*en banc*), *appeal denied sub nom. Petition of Davis,* 515 Pa. 568, 526 A.2d 1190 (1987), and 515 Pa. 569, 526 A.2d 1190 (1987) (finding employer's vehicle exclusion in its insurance policy to exclude coverage even though claim was made that employer negligently entrusted vehicle to employ-

**3.** We further note that our research reveals that the "trend" recognized by this Court in *Erie* appears to continue, as our research reveals numerous states in more recent cases have concluded that a negligent entrustment claim is not separate from the underlying act of negligence. *See e.g., Oahu v. Transit Services v. Northfield Ins. Co.,* 107 Hawai'i 231, 112 P.3d 717 (2005); *Illinois Farmers Ins. Co. v. Wiegand,* 808 N.E.2d 180 (Ind.Ct.App. 2004); *Am. Family Mutual Ins. Co. v. Corrigan,* 697 N.W.2d 108 (Iowa 2005); *Otwell v. State Farm Fire & Cas. Co.,* 914 So.2d 100 (La.App. 2 Cir.2005); *Austin Mut. Ins. Co. v.*

*Klande,* 563 N.W.2d 282 (Minn.Ct.App.1997); *Meyers v. Miss. Ins. Guar. Ass'n,* 883 So.2d 10 (Miss.2003); *A.J. Cameron Sod Farms v. Continental Ins. Co.,* 142 N.H. 275, 700 A.2d 290 (1997); *Conduit & Found. Corp. v. Hartford Cas. Ins. Co.,* 329 N.J.Super. 91, 746 A.2d 1053 (2000); *Mount Vernon Fire Ins. Co. v. Creative Hous.,* 88 N.Y.2d 347, 645 N.Y.S.2d 433, 668 N.E.2d 404 (N.Y.1996); *Offhaus v. Guthrie,* 140 Ohio App.3d 90, 746 N.E.2d 685 (2000); *Taylor v. American Fire & Cas. Co.,* 925 P.2d 1279 (Utah App.1996); *Mailhiot v. Nationwide Mut. Fire Ins. Co.,* 169 Vt. 498, 740 A.2d 360 (1999).

ee; it was not the negligent entrustment of the vehicle that caused the plaintiff's injuries, but rather, the use of the vehicle by the employee that caused the harm.) *See also Madison Construction Company,* 557 Pa. at 611–12, 735 A.2d at 100, 109–10 (concluding that pollution exclusion operated to deny coverage under subcontractor's comprehensive general liability policy even though additional negligence claims, including negligent maintenance of construction site, were raised in the complaint; because all of these claims "arose out of" the release of a pollutant); *Christiansen v. Silfies,* 446 Pa.Super. 464, 667 A.2d 396, 400 (1995) (acknowledging that Superior Court has held in several cases that liability for negligent entrustment does not attach to the entrustor until the entrustee uses the entrusted instrumentality negligently and is found causally responsible for ensuing harm).

¶ 18 Contrary to the Wilchas' claim on appeal, we also find the federal district court's decision in the factually similar case of *Motorists Mutual Insurance Company v. Kulp,* 688 F.Supp. 1033 (E.D.Pa. 1988), *affirmed,* 866 F.2d 1411 (3d Cir. 1988), to be persuasive. In *Kulp,* the insureds permitted their ten-year-old son to operate a motorized minibike in a field near their home. As a result, a nine-year-old boy suffered serious injuries to his face and head. Suit was brought against Harrison and Betty Kulp (the Kulps), the minor's parents, in which it was alleged that they were negligent in the supervision and entrustment of the minibike to their ten-year-old son. The Kulps sought coverage under their homeowner's policy issued by Motorists Mutual Insurance Company (Motorists Mutual). Motorists Mutual denied coverage on the basis of an exclusion for bodily injury "arising out of the ownership, maintenance, use, loading or unloading of ... (2) a *motor vehicle* owned or operated by, or rented or loaned to any

insured." *Kulp,* 688 F.Supp. at 1034 n. 1. After determining that the minor's use of the motorbike fell within the exclusion, the district court discussed, as we did in *Erie* and *Pulleyn,* the different approaches to the issue of negligent entrustment of a motor vehicle vis-à-vis a homeowner's policy as found within various states' decisional law. In upholding the coverage, the district court stated:

> I have no reason to believe that the Pennsylvania Supreme Court would reject the reasoning of the *en banc* Superior Court in *Pulleyn.* Nor do I see any basis for distinguishing *Pulleyn* from the present case. I therefore conclude that the Pennsylvania Supreme Court would hold that it is not the negligent supervision or negligent entrustment of the minibike, but the use of that bike, which triggered the insured's alleged liability, and that the insurance policy excludes coverage for that use.

*Kulp,* 688 F.Supp. at 1037–38. We believe the federal district court's reasoning is sound, is consistent with more recent Pennsylvania jurisprudence, and is equally applicable to the facts of the present case.

¶ 19 Finally, we address the Wilchas' claim that the trial court erred in failing to address the earlier Lackawanna County decision in *Allstate Insurance Company v. Gravine,* 2 Pa. D. & C. 4th 48 (Lacka.Co.1988). In *Gravine,* Allstate Insurance Company brought a declaratory judgment action in which it sought a determination as to whether it owed a defense and coverage under the homeowner's policy and/or an automobile policy it had issued to the insureds with regard to an incident in which the insureds' fourteen-year-old son was operating a motorbike, along with a fourteen-year-old passenger, that was involved in a collision with a motor vehicle at an intersection in Carbondale. The insureds' son was killed

and the passenger sustained serious injuries.

¶ 20 The complaint filed by the teenage passenger's parents against the insureds included a claim against the estate of the deceased for the negligent operation of the motorbike and a second claim against the insureds asserting the negligent supervision of their son. In concluding that Allstate had a duty to defend the insureds' under its homeowner's policy, the trial court in *Gravine* reasoned:

> The issue of parental care or accountable conduct arising from negligent supervision by parents is simply a diverse basis for alleged liability and is non-auto related. It is conduct primarily concerned with the [parents] failing to exercise reasonable care and control over their minor son. *See Erie Insurance Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363 (1987), where the Supreme Court discussed a homeowner's insurer's duty to defend claims of negligent supervision despite exclusion in a homeowners [sic] policy for injuries occurring out of the use of a motor vehicle.

> \* \* \* \* \* \*

> [T]he charge of negligent supervision is not only set out separately in the averments but its gist is predicated on the parent's conduct, failing to supervise their minor child. Juxtaposed, where the liability of the insured arises from negligent acts which constitutes non-auto related conduct, the policy should be applicable regardless of the automobile exclusion. Consequently, since the underlying Complaint filed by the injured party avers acts which are potentially within the coverage of the policy, i.e., negligent supervision, Allstate is

duty bound to defend the [insureds] in the underlying action.

*Gravine*, 2 Pa. D. & C. 4th, at 52, 53 (citations omitted).[4]

¶ 21 Of course, this Court is not required to follow decisions of trial courts. Moreover, we do not find it persuasive in light of the discussions by this Court in *Erie* and *Pulleyn*, as well as the more recent case law cited above. In addition, we find the above reasoning in *Gravine* to be faulty. While our Supreme Court in *Erie* did conclude that Transamerica had a duty under the homeowner's policy it issued to the insureds to defend a negligent supervision claim, this holding cannot be viewed in isolation, but rather, must be considered in light of the fact that the high court had already determined that the three-and-one-half-year old in that case could not "use" a vehicle. *See supra.* Thus, the claim of negligent supervision within the complaint was truly independent and separate from the incident involving the motor vehicle. The same was not true in *Gravine* or in the present case.

¶ 22 In summary, we hold that, given the circumstances of this case, Nationwide has no duty to defend the Wilchas in either action. Thus, we affirm that part of the trial court's order that found no duty to defend in the lawsuit instituted by the Arnolds and reverse that part of the order that found Nationwide has a duty to defend the action instituted by the Wilchas.

¶ 23 Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

---

4. Given this decision, the trial court concluded that it did not need to address whether the insureds' automobile policy provided a duty to defend and/or coverage.