**Regis Insurance Company v. Bungi's Inc.**

C.P. of Beaver County, no. 11977 of 2004.

*Miles A. Kirshner,* for plaintiff.
*Donald Balsley,* for defendant Bungi's Inc.
*James J. Ross,* for defendant David L. Byrd.

KUNSELMAN, *P.J.,* March 29, 2006—This matter is before the court on a motion for judgment on the pleadings or, in the alternative, a motion for summary judgment filed on behalf of the plaintiff, Regis Insurance Company. Therein, Regis contends that it has no duty to defend or indemnify the defendant, Bungi's Inc., t/a Bungi's Lounge, in a personal injury action filed against Bungi's by the defendant, David L. Byrd. We agree and will grant the motion.

The facts are that Byrd was attacked and seriously injured in the parking lot of Bungi's Lounge by Brian Phillips, a fellow patron of the lounge. The injuries sustained by Byrd were clearly caused by an intentional act or acts committed by Phillips. Byrd filed suit against Bungi's, alleging that the injuries sustained by him were caused by the negligence of Bungi's. While the aver-

ments of negligence are specific, they generally relate to the failure of Bungi's to prevent the injuries while knowing of the patron's violent propensities. Suit was not filed against Phillips.

Regis provided insurance coverage for Bungi's pursuant to its special multi-peril policy. When asked by Bungi's to defend Byrd's lawsuit, Regis declined because of an assault and battery exclusion in the policy. Regis then filed this declaratory judgment action seeking a declaration that it has neither the duty to defend nor the duty to indemnify Bungi's against Byrd's claims. The language of the exclusion relied upon by Regis is set forth in endorsement RAB-3 (12/99), which provides, in relevant part, as follows:

"(I) In consideration of the premium charged for this insurance, it is understood and agreed that the policy to which this endorsement is attached is amended and modified as follows: . . .

"Actions and proceedings to recover damages for 'bodily injury' . . . arising, in whole or in part, from the following are excluded from coverage, and the company is under no duty to investigate, defend or to indemnify an insured in any action or proceeding alleging such causes of action and damages:

"(1) Assault and battery or any act or omission in connection with the prevention, suppression or results of such acts;

"(2) Harmful or offensive contact between or among two or more persons;

"(3) Apprehension of harmful or offensive contact between or among two or more persons; or

4

"(4) Threats by words or deeds.

"(5) This exclusion applies to 'bodily injury,' . . . or any obligation to investigate, defend or indemnify, if such injury, damage or obligation is caused directly or indirectly by any other cause or event that contributes concurrently or in any other sequence to the injury or damage. If injury or damage from a covered occurrence, cause or event occurs, and that injury or damage would not have occurred but for the acts or omissions set forth in paragraphs 1 through 4 above, such injury or damage will be considered to be caused by the acts or omissions set forth in paragraphs 1 through 4 above, and would be excluded from coverage."

This exclusion applies regardless of the degree of culpability or intent and without regard to:

"(A) Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

"(B) The alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;

"(C) The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct or to medically treat or obtain such treatment for any injuries or damages sustained." Complaint, exhibit B, Endorsement RAB-3 (12/99).

This endorsement was effective for the policy year beginning October 29, 2003. However, the same endorse-

ment had been a part of Bungi's policy each year from October 29, 2000.

Since the parties have submitted evidence in addition to the pleadings, we will ignore the request for judgment on the pleadings and proceed to rule on the motion for summary judgment.[1] Our Supreme Court recently reaffirmed the standard of review which governs motions for summary judgment.

"When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. . . . A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt." *Swords v. Harleysville Insurance Companies,* 584 Pa. 382, 389-90, 883 A.2d 562, 566-67 (2005). (citations omitted)

The duty of an insurer to defend is separate from its duty to indemnify. *Wilcha v. Nationwide Mutual Fire Insurance Company,* 887 A.2d 1254, 1258 (Pa. Super. 2005). The duty to defend is upon the insurer even if the

---

1. In ruling on a motion for judgment on the pleadings, the court must confine itself to the pleadings themselves and any documents attached thereto. *Wilcha v. Nationwide Mutual Fire Insurance Co.,* 887 A.2d 1254, 1258 (Pa. Super. 2005).

underlying suit is groundless or fraudulent. *Id.* Consequently, whenever the underlying complaint alleges a claim which may potentially come within the coverage, the insurer must defend it. *Id.* Thus, we must first ascertain the scope of the coverage and then analyze the allegations in the complaint. *Id.*

The policy was issued to Bungi's for a term beginning October 29, 2003 to October 29, 2004, and provided coverage which included bodily injury liability coverage, subject to the assault and battery exclusion hereinabove set forth. Pursuant to RAB-3, excluded from such coverage are actions to recover damages for bodily injury arising, in whole or in part, from: (1) assault and battery or any act or omission in connection with the prevention, suppression or results of such acts; (2) harmful or offensive contact between or among two or more persons; or, (3) any other cause or event that contributes concurrently or in any other sequence to the injury; or, (4) an injury from a covered occurrence if the injury would not have occurred but for the acts or omissions set forth in items 1, 2 or 3.

A review of the underlying complaint establishes a claim by Byrd against Bungi's based upon the fact that Byrd was "beaten" by Phillips, whose propensities for violence were known by Bungi's. The complaint alleges that Byrd's injuries were caused by the "carelessness, recklessness and negligence" in certain particulars. The particulars include: (1) failure to supervise the premises; (2) failing to prevent individuals from congregating in the parking lot, creating a potential for assaults; (3) failing to retain a security guard or monitoring system; (4) failing to provide adequate lighting; (5) permitting Brian Phillips

to patronize its Lounge knowing of his violent propensities; and, (6) permitting Brian Phillips to remain in the Lounge after he had engaged in a fight earlier that evening.

All of the foregoing acts of alleged negligence come within the language of the exclusionary clause. However, the defendants seek to avoid the exclusionary clause on several bases. Bungi's contends that the fight was voluntarily entered into by Byrd and that the exclusionary clause does not exclude negligence. Byrd contends that (1) his injuries were caused by Bungi's negligence; (2) Bungi's reasonably expected coverage for assault and battery; (3) Regis failed to give Bungi's proper notice of a change in coverage; (4) Regis is bound by statements made by the independent insurance agent that Bungi's had assault and battery coverage by reason of apparent authority.

## FIGHT BY MUTUAL CONSENT

Bungi's seems to be arguing that the fight was consensual and therefore the assault and battery exclusion does not apply. No authority is cited for this proposition because there is none. Even in a consensual fight, blows are struck with intent to do so. Therefore, an assault and battery still occurs. It may be less serious. Cf. 18 Pa.C.S. §2701(b)(1) (Assault is a misdemeanor of the second degree unless committed in a fight entered into by mutual consent in which case it is a misdemeanor of the third degree). But it is still an assault.

## NEGLIGENCE

Both Bungi's and Byrd argue that the exclusion does not apply because Byrd's complaint alleges only negli-

gence on the part of Bungi's as the cause of Byrd's injuries and not an assault and battery. This contention has been rejected where the contract terms unambiguously exclude coverage. *Madison Construction Company v. Harleysville Mutual Insurance Company,* 557 Pa. 595, 735 A.2d 100 (1999); *Matcon Diamond Inc. v. Penn National Insurance Company,* 815 A.2d 1109 (Pa. Super. 2003).

In the case at bar, the policy language excludes from its coverage actions to recover damages for bodily injury arising, *in whole or in part,* from assault and battery, *or* any act or omission in connection with the prevention, suppression or results of such acts, *or,* any other cause or event which contributes concurrently or in any other sequence to the injury, *or* an injury from a covered occurrence (negligence) if the injury would not have occurred but for the acts or omissions set forth hereinabove. This contract language unambiguously excludes coverage for the acts of negligence alleged in Byrd's complaint.

## REASONABLE EXPECTATIONS

The general rule is that "courts cannot invoke the reasonable expectation doctrine to create an ambiguity where the policy itself is unambiguous." *Matcom Diamond Inc. v. Penn National Insurance Company, supra,* at 1114. The two recognized exceptions to this rule include: (1) protecting non-commercial insureds from policy terms which are not readily apparent; and, (2) protecting non-commercial insureds from deception by insurance agents. *Id.,* citing *Madison Construction Company v. Harleysville Mutual Insurance Co., supra,* 735 A.2d at 109 n.8.

These two exceptions do not apply to the case at bar for two reasons. First, the insured is a commercial insured rather than a non-commercial insured. Second, the policy terms are readily apparent. Nevertheless, Bungi's cannot claim the reasonable expectation doctrine even if it was available to it. This is for the reason that the language of the exclusion was a part of its policy for several years and, as we have observed, clearly and unambiguously did not provide coverage for assaults.

## FAILURE TO GIVE PROPER NOTICE OF CHANGE IN COVERAGE

The initial policy issued by Regis to Bungi's had form RAB-2 (12/96). This form was changed the following policy year by form RAB-3 (12/99). Regis does not dispute that Bungi's did not receive notice of this change. RAB-2 (12/96) and RAB-3 (12/99) are identical except for certain words or language which was inserted in RAB-3 (12/99) and did not appear in RAB-2 (12/96). In order to demonstrate the change, we have hereinafter set forth the language of RAB-3 (12/99) but have highlighted the words and language which were added to RAB-2 (12/96). It is as follows:

"ASSAULT AND BATTERY EXCLUSION AND COVERAGE DELETION ENDORSEMENT

"(I) In consideration of the premium charged for this insurance, it is understood and agreed that the policy to which this endorsement is attached is amended and modified as follows:

"Actions and proceedings to recover damages for 'bodily injury' or 'property damage' or 'personal injury' arising, in whole or in part, from the following are ex-

cluded from coverage and the company is under no duty to *investigate,* defend or to indemnify an insured in any action or proceeding alleging such causes of action and damages:

"(1) Assault and battery or any act or omission in connection with the prevention, suppression or results of such acts;

"(2) Harmful or offensive contact between or among two or more persons;

"(3) Apprehension of harmful or offensive contact between or among two or more persons; or

"(4) Threats by words or deeds.

*"(5) This exclusion applies to 'bodily injury,' 'property damage,' 'personal injury' or any obligation to investigate, defend or indemnify, if such injury, damage or obligation is caused directly or indirectly by any other cause or event that contributes concurrently or in any other sequence to the injury or damage. If injury or damage from a covered occurrence, cause or event occurs, and that injury or damage would not have occurred but for the acts or omissions set forth in paragraphs 1 through 4 above, such injury or damage will be considered to be caused by the acts or omissions set forth in paragraphs 1 through 4 above, and would be excluded from coverage."*

This exclusion applies regardless of the degree of culpability or intent and without regard to:

"(A) Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises

owned or occupied by the insured; or by any other person;

"(B) The alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;

"(C) The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct or to medically treat or obtain such treatment for any injuries or damages sustained."

This exclusion applies as well to any claims by any other person, firm or organization, asserting rights derived from or contingent upon any person asserting a claim excluded under Clauses A, B or C (above); specifically excluding from coverage claims for:

"(1) Emotional distress or for loss of society, services, consortium and/or income;

"(2) Reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization;

"(3) *Apprehension of harmful or offensive contact between or among two or more persons; or*

"(4) *Threats by words or deeds;*

"(5) Any obligation to share damages with, or repay someone who must pay damages because of the injury.

"(II) It is further agreed between the insured and the company that:

"(1) If this policy contains the Broad form Comprehensive General Liability Endorsement (GL0404 ED 5-

81), paragraph 'XI Extended Bodily Injury Coverage,' it is deleted from that endorsement and rendered null and void.

"(2) If this policy contains the Extended Form General Liability Endorsement (REGL1 6-94), paragraph 'XI Extended Bodily Injury Coverage,' it is deleted from that endorsement and rendered null and void."

Byrd claims that Bungi's policy was changed two different times without notice to Bungi's, and therefore Regis cannot rely upon the Assault and Battery Exclusion. In support thereof, he cites *Tonkovic v. State Farm Mutual Automobile Insurance Company,* 513 Pa. 445, 521 A.2d 920 (1987). In that case, the insured had requested specific coverage and paid the full premium in advance. However, the policy was issued with an exclusion for the specific coverage. The insured never received the policy and the change in coverage was never explained to him. On these facts, the Supreme Court said:

"We hold that where, as here, an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." 513 Pa. at 455, 521 A.2d at 925.

Byrd first contends that Bungi's initially contacted the Benedict Insurance Agency to secure insurance and instructed Benedict that it wanted assault and battery coverage. Benedict initially placed Bungi's insurance with Farmers Fire Insurance Company, which issued a policy with coverage for assault and battery. However, Benedict changed the coverage from Farmers Fire Insurance Com-

pany to Regis the following year (1999), which policy contained the exclusion set forth in RAB-2 (12/1996).

Byrd then contends that there is a factual question as to whether Benedict was an agent of Regis by way of apparent authority. If Benedict is found by a jury to be Regis' agent, then Regis would be bound by Bungi's reasonable expectation of assault and battery coverage under *Pressley v. Travelers Property Casualty Corporation,* 817 A.2d 1131 (Pa. Super. 2003). In *Pressley,* Travelers' agent was requested by Pressley to add her mother to her policy with the same coverage. The agent promised to do so but failed to do so. Since Pressley's mother did not reside in Pressley's household, coverage was denied when her mother was killed. Superior Court held that the agent's assurance created a reasonable expectation in Pressley that her mother was covered and that, since an insurer is liable for the acts of its agent who had authority to bind coverage, Travelers was liable. 817 A.2d at 1138 and 1141.

In the case at bar, Byrd points to the following facts as creating an issue of apparent authority. Benedict provided an initial risk assessment to Regis, presented premium quotes from Regis to Bungi's, and bound coverage for Regis; collected premiums from Bungi's and remitted to Regis; received the policy from Regis and either delivered or arranged for a delivery or pick up of the policy to or by Bungi's.

"It is well settled that '[a]pparent authority exists where a principal *by words or conduct,* leads people . . . to believe that the principal has granted the agent authority he or she purports to exercise' . . . However, this court has not always required direct communication from the

principal to the third party. Rather, this court has found apparent authority to be established with a showing of: (1) limited authority given to the agent by the principal; *and* (2) conduct of the agent which demonstrates to the third-party the agent's apparent authority to bind the principal." *Leidigh v. Reading Plaza General Inc.,* 431 Pa. Super. 310, 314, 636 A.2d 666, 667-68 (1994). (emphasis in part in original and in part supplied)

Moreover, "a third party is entitled to believe [an] agent has the authority he purports to exercise only where a person of ordinary prudence, diligence and discretion would so believe." *Id.* at 315, 636 A.2d at 668, citing *Bolus v. United Penn Bank,* 363 Pa. Super. 247, 262, 525 A.2d 1215, 1222 (1987).

In the case at bar, there is no evidence that Regis had given Benedict any authority, limited or otherwise. In addition, Bungi's knew Benedict was an independent agent, acting on its behalf and not Regis'. Therefore, it cannot be said that Bungi's was entitled to believe Benedict was Regis' agent.

Byrd also contends that the assault and battery endorsement set forth in RAB-3 (12/99) is more restrictive to coverage than RAB-2 (12/96) and, since Bungi's was not given notice of the changes nor were they explained to Bungi's, *Tonkovic* applies and Regis cannot invoke the exclusion. We do not believe *Tonkovic* applies here for several reasons. First, the facts are different. The coverage in *Tonkevic* was placed by State Farm's agent and State Farm unilaterally changed the coverage from what had been requested. The insured had not seen the policy. Here, the coverage was not placed by an agent of Regis and Regis did not unilaterally change the coverage. In

fact, the coverage was essentially identical as had existed from the first through three prior policy years. Although the owner of Bungi's had received the policies in each of the prior years, he had not read them and did not determine the presence or absence of the assault and battery exclusion. He did, however, acknowledge at his deposition that he understood the language of both RAB-2 and RAB-3 endorsements to mean that coverage for liability arising from a fight was excluded.

Second, the language of RAB-3 clearly and unambiguously excludes coverage for Byrd's claim even if the added language in RAB-3 is ignored.

Consequently, insofar as exclusion from coverage is concerned, there was no change and so *Tonkevic* does not apply for that reason as well.

Finally, Regis' motion cites a prior decision of this court as controlling. In *Regis Insurance Co. v. Man-Cor Enterprises Inc.,* no. 10225 of 2006, Senior Judge Rowley decided a case which was essentially factually indistinguishable from the case at bar. He found the case to be controlled by *Britamco Underwriters Inc. v. Grzeskiewicz,* 433 Pa. Super. 55, 639 A.2d 1208 (1994) and held that the plaintiff's allegations of negligence were clearly excluded by the assault and battery endorsement.

Byrd contends that *Grzeskiewicz* was disapproved by Superior Court, en banc, in *Donegal Mutual Insurance Co. v. Baumhammers,* 893 A.2d 797 (Pa. Super. 2006). We disagree as to the exclusionary clause. Both cases involved an issue of whether the alleged negligence of the insured, arising out of an assault by another patron, constituted an "occurrence" within the policy of insur-

ance as well as an issue of the applicability of an exclusion. Superior Court in *Grzeskiewicz* concluded that the allegation of the bar owner's negligence did not constitute an "occurrence" as that term was defined in the policy. The court went on to hold that, notwithstanding its conclusion regarding the occurrence issue, the assault and battery endorsement clearly excluded coverage in the case.

The court in *Donegal Mutual Insurance Co. v. Baumhammers, supra,* criticized the holding of the court in *Grzeskiewicz* "that there was no occurrence, essentially concluding that, regardless of whether negligence by an insured may have led to the incident, unless the actor himself is alleged to have negligently caused the injuries, the incident may not be viewed an accident." 893 A.2d at 808.

The court in *Donegal Mutual Insurance Co. v. Baumhammers* further said, "the holding in *Grzeskiewicz* produces an anomalous result: it allows for coverage under policies such as the Donegal policy where the insured himself negligently causes injury, but not where the insured negligently enables another actor to intentionally cause injury." *Id.* at 809.

Finally, the court said "the main thrust of our Pennsylvania case law warrants a conclusion, and thus we hold that negligence leading to intentional acts may nevertheless be considered an 'accident,' and thus an 'occurrence' where so defined. To the degree that *Grzeskiewicz* holds otherwise, it is now expressly disapproved." *Id.* at 810. That is the extent of the criticism of *Grzeskiewicz* in the *Baumhammers'* opinion. Thus, contrary to Byrd's contention, *Baumhammers* does not dis-

approve the *Grzeskiewicz* holding regarding the application of the assault and battery endorsement.

An appropriate order is attached.

### ORDER

For the reasons set forth in the attached opinion, the motion for summary judgment filed on behalf of Regis Insurance Company is granted. Regis Insurance Company owes Bungi's Inc. t/a Bungi's Lounge no duty to defend the underlying tort action filed by David L. Byrd at no. 11671 of 2004.

It is further declared that, if and when the underlying action results in a recovery by David L. Byrd against Bungi's Inc., t/a Bungi's Lounge on his claims, Regis Insurance Company has no duty to indemnify Bungi's Inc. t/a Bungi's Lounge for such recovery.