**MOTORISTS MUTUAL INSURANCE CO.**

v.

**Harrison KULP, et al.**

**Civ. A. No. 87–3358.**

United States District Court,
E.D. Pennsylvania.

June 23, 1988.

**1034**

Walter J. Timby, Philadelphia, Pa., for plaintiff.

George A. Heitczman, Bethlehem, Pa., for Kulp.

David M. Jakobi, Paoli, Pa., for Topper.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is a declaratory judgment action brought by Motorists Mutual Insurance Company against Harrison Kulp and Betty Kulp, holders of a homeowner's insurance policy issued by the plaintiff, and Laurie A. Topper, the parent and natural guardian of Timothy L. Topper, a minor. Presently pending are cross motions for summary judgment filed by all parties. These motions require me to consider, first, whether the motorized minibike involved in the underlying accident was a motorized land vehicle within the meaning of the policy; second, whether the Pennsylvania Supreme Court would hold that the Motorists Mutual homeowner's policy at issue here ex-

cludes coverage for a claim of negligent entrustment under the facts of this case; and, third, whether the Kulps had a reasonable expectation of coverage under this policy.

### Background

On July 14, 1986, Timothy Topper, age 9, was visiting the home of his aunt and uncle, Betty and Harrison Kulp. He and his 10 year old cousin, Kerry Kulp, were playing in the yard on Kerry's motorized minibike. Mrs. Kulp gave the boys permission to take the minibike to a nearby field where children commonly rode minibikes like Kerry's, as well as larger dirt bikes. Although not far from the Kulp house, this field was neither part of nor adjacent to the Kulp's premises. While riding the minibike in this field, Timothy suddenly turned in front of another child riding a dirt bike who, unable to stop, collided with Timothy. Timothy fell from the minibike and suffered serious injuries to his face and head.

A claim was made on behalf of Timothy Topper under the Kulps' homeowner's policy. The defendants characterize this claim as a claim for negligent supervision and negligent entrustment by the Kulps. Thereafter, Motorists Mutual brought the present action seeking a declaratory judgment that the homeowner's policy excluded coverage for Timothy's injuries. Motorists contends that the claim arose out of the use of a motor vehicle owned by an insured.[1]

### The Bike

The minibike which Timothy was riding is no longer available for inspection, but has been described at length during the depositions in this case. It was a small scooter equipped with a lawnmower engine. The minibike was assembled by a family friend. The engine was started by means of a pull rope. The minibike was equipped with a right hand throttle for acceleration; there were no gears. It had a maximum speed of approximately 10 m.p.h. The bike

---

1. The policy excludes coverage for bodily injury "arising out of the ownership, maintenance, use, loading or unloading of: ... (2) a motor vehicle owned or operated by, or rented or loaned to any insured."

had a pedal brake. The minibike stood approximately 36–40″ high, and had wheels which have been described as approximately 10″ in diameter and thicker than a bicycle tire.

The minibike was not licensed for use on public roads, and there is no evidence that the minibike was ever used on public roads.[2] It was used only for recreation, and not for transportation. It could be, and sometimes was used on the Kulp premises; however, the neighboring field was more attractive because it offered a greater space in which to ride.

The Kulps have both stated that they viewed the minibike as a "toy," or "a step above a toy." It appears that the size of the bike made it suitable only for young children. But whether intended as a toy or not, the Kulps recognized a safety hazard and never allowed their son to ride the bike without a helmet.

 The policy excludes coverage for personal injuries arising out of the ownership, maintenance or use of "a motor vehicle" owned by any insured. Motorists Mutual argues that the Toppers' claim falls within that exclusion and that coverage was, therefore, properly denied. Defendants contend, first, that the bike was not a motor vehicle within the meaning of the policy.

The policy defines a "motor vehicle" as:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle.

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 5a is not a motor vehicle;

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by any insured and designed for recreational use off public roads, while off an insured location. A motorized golf cart

while used for golfing purposes is not a motor vehicle;

d. any vehicle while being towed by or carried on a vehicle included in 5a, 5b or 5c.

Policy, page 1 at 5.

 Plaintiff contends that the definition contained in subsection c includes the minibike involved here. Defendants maintain that there is an ambiguity contained in that subsection which must be construed against the insurer. Specifically, they argue that, under the last antecedent phrase rule, the phrase "while off an insured location" modifies only the phrase "designed for recreational use off public roads." Since, according to defendants, there is no reason why the minibike could not have been used on an insured location, it is not "designed for recreational use off public roads while off an insured location," and not within the exclusion.

Defendants' reading of the policy is contrary to the plain meaning of the subsection. Reading the subsection in its entirety, and giving due recognition to the placement of a comma before the limiting phrase, subsection c clearly and unambiguously defines as a "motor vehicle" any recreational vehicle designed for use off public roads while it is being used off an insured location; such vehicles are excluded from the definition if they are being used on an insured location.

Reading section 5 in its entirety, it is equally clear that the phrase "designed for recreational use off public roads" distinguishes the vehicles described in subsection c from those described in subsection a. Defendants' argument that "while off an insured location" modifies only "designed for recreational use off public roads" tortures the plain meaning of the subsection.

The Kulp defendants also argue that the minibike was a mere "toy," not "designed for recreational use off public roads." They argue that the examples contained in subsection c (snowmobiles and golf carts) illustrate that the definition was "intended to encompass vehicles that are designed

2. The boys pushed the minibike from the Kulp premises to the neighboring field.

and normally understood to be for recreational use, not a toy constructed or reconstructed by a father and his son."

I disagree. This minibike was certainly not designed for use on public roads; therefore, it must be assumed to have been designed for use off public roads.[3] It was not designed for transportation or any purpose other than recreation. I fail to understand defendants' distinction between an article designed for recreational use and a toy. Nor can I perceive a distinction between a snowmobile or a golf cart and this vehicle.[4]

Therefore, I conclude that the minibike involved in this accident was a motor vehicle as defined by the policy.

### Negligent Entrustment or Negligent Supervision

Defendants contend that the claim against Motorists Mutual arises out of the Kulps' alleged act of negligent supervision or negligent entrustment, and not out of the use of the minibike. They argue that, therefore, their claim does not fall within the policy exclusion.

*Pulleyn v. Cavalier Ins. Corporation,* 351 Pa.Super. 347, 505 A.2d 1016 (1986), *alloc. denied,* 515 Pa. 569, 526 A.2d 1190 (1987), is on all fours with the present case. There, Steven James Kirk, acting in the course of his employment, was driving a car owned by his employers. He was involved in an accident with an oncoming car; plaintiff's wife and child were killed in the accident. Plaintiff brought suit against the employer on a theory of negligent entrustment of an automobile to a person with physical illness or incapacity. Coverage was sought under a general liability insurance policy which excluded coverage for "bodily injury ... arising out of the ownership, maintenance, operation, use, loading or unloading of: ... (2) any other automobile ... operated by any person in the course of his employment by any insured."

In what it called a case of first impression for the appellate courts of Pennsylvania, the *en banc* panel of the Superior Court held that the policy excluded coverage. The court reviewed the divided case law in this area. It noted that those cases which have found coverage have done so on the theory that the gravamen of the action is not the use of the motor vehicle, but the prior failure to supervise a dangerous instrumentality. *See Douglass v. Hartford Insurance Co.,* 602 F.2d 934, 935–36 (10th Cir.1979); *Upland Mutual Insurance, Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974); *Republic Vanguard Insurance Co. v. Buehl,* 295 Minn. 327, 204 N.W.2d 426 (1973); *Lalomia v. Bankers & Shippers Insurance Co.,* 35 A.D.2d 114, 312 N.Y.S.2d 1018 (1970), *aff'd,* 31 N.Y.2d 830, 339 N.Y.S.2d 680, 291 N.E.2d 724 (1972). Other courts have declined to find coverage, following the "dovetail" approach which is "premised upon the principle that the insured must look to the basic protection provided by the specific insurance agreement designed to cope with the risk inherent in automobile operation, with homeowner's protection available only to cover all other general or unspecified risks." *Insurance Company of North America v. Waterhouse,* 424 A.2d 675, 680 (Del.Super.1980). *See Bartels v. Romano,* 171 N.J.Super. 23, 407 A.2d 1248 (1979). Finally, a number of courts which have declined to find coverage have reasoned that "although the act of negligently entrusting a motor vehicle is an essential (if not the primary) element of the tort, liability giving rise to the tort is not actually triggered until the motor vehicle is used in a negligent manner resulting in injury." *Michigan Mutual Insurance Co. v. Sunstrum,* 111 Mich.App. 98, 104, 315 N.W.2d 154, 157 (1981). *See Hanover Insurance Co. v. Grondin,* 119 N.H. 394, 402 A.2d 174 (1979); *Lumbermens Mutual Casualty Co. v. Kosies,* 124 Ariz. 136, 602 P.2d 517 (1979); *Barnstable County Mutual Fire Insurance Co. v. Lally,* 374 Mass. 602, 373

---

**3.** Defendants' argument that it was not "designed" for anything is without merit.

**4.** I note that a golf cart being used while playing golf, at which time it serves as a mode of transportation, is specifically excluded from the definition of motor vehicle.

N.E.2d 966 (1978); *Cooter v. State Farm Fire & Casualty Co.*, 344 So.2d 496 (Ala. 1977); *Farmers Insurance Group v. Johnson*, 43 Wash.App. 39, 715 P.2d 144 (1986); *Williamson v. Continental Casualty Co.*, 201 N.J.Super. 95, 492 A.2d 1028 (1985); *Insurance Company of North America v. Waterhouse*, 424 A.2d 675.

The *en banc* Superior Court was persuaded by the reasoning of those courts declining to find coverage on the ground that liability was triggered by the use of the automobile:

> It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by the entrustee—that is missing in the rationale of those cases upholding coverage. Taken literally, this line of reasoning—that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability—the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have observed, this does not comport with the elements that make up this tort concept of negligent entrustment.

*Pulleyn*, 351 Pa.Super. at 354, 505 A.2d at 1020 (quoting *Cooter v. State Farm*, 344 So.2d at 499).

In the present action, defendants rely principally on *Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747 (1981). However, the *Pulleyn* court explicitly and properly distinguished the *Eichelberger* decision. In *Eichelberger*, the tortfeasor was a woman who was standing slightly on a highway behind her disabled vehicle. She suddenly stepped backwards and to her left, stepping directly in front of an oncoming vehicle. This negligent conduct caused the oncoming vehicle to strike and kill the woman and, losing control, injured another bystander. The Superior Court held that the accident was not proximately caused by the use of the vehicle, but merely causally connected with that use, and therefore did not 'arise out of' the use of a vehicle. As noted by the *Pulleyn* court, *Eichelberger* did not involve a claim of negligent entrustment. More importantly, at the time of the injury, the insured was not operating any motor vehicle. The automobile's only connection to the accident was the fact that if the automobile had not run out of fuel, its driver would not have been standing in the road. The issue in *Eichelberger* was one of causation; that issue was not present in *Pulleyn* and is not present here.

■ In the absence of a controlling decision from the Pennsylvania Supreme Court,[5] my task is to predict how that court would resolve this question. *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). In making that prediction, I am mindful that, under Pennsylvania law, insurance policies will be construed most strongly against the insurer and the burden is on the defendant to establish an affirmative defense based on an exclusion in the policy. *Erie Insurance Exchange v. Transamerica Insurance Co.*, 516 Pa. 574, 580, 533 A.2d 1363, 1366 (1987). I am also mindful that declarations of lower state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

■ I have no reason to believe that the Pennsylvania Supreme Court would reject the reasoning of the *en banc* Superior Court in *Pulleyn*. Nor do I see any basis for distinguishing *Pulleyn* from the present case. I therefore conclude that the Pennsylvania Supreme Court would hold that it is not the negligent supervision or negligent entrustment of the minibike, but the use of that bike, which triggered the insured's alleged liability, and that the in-

---

**5.** *See Erie Insurance Exchange v. Transamerica Insurance Co.*, 516 Pa. 574, 533 A.2d 1363, 1368 n. 7 (1987).

surance policy excludes coverage for that use.

### Reasonable Expectation of Coverage

Defendants argue that even if coverage is not otherwise available under the homeowner's policy, the exclusion should be voided as a matter of public policy because no other policy offered by Motorists Mutual would have afforded coverage. Defendants argue, further, that the exclusion should not be enforced because the Kulps had a reasonable expectation of coverage.

There is no support for defendants' contention that the automobile and homeowner's policies constituted an insurance "package." The mere fact that two policies are purchased from the same company does not create a presumption that all possible risks are covered. The homeowner's policy is the only policy presented for this court's consideration.

I find nothing unconscionable in the exclusion relied upon by the insurer in this case. Such clauses are not unusual in homeowner's policies in Pennsylvania. I know of no case law to support defendants' position that an issuer of a homeowner's policy has an absolute obligation to provide coverage for the use of a motorized bike off of the insured premises.

Nor is there any basis for defendants' contention that the Kulps had a reasonable expectation of coverage. The general rule in Pennsylvania is that "where ... the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 307, 469 A.2d 563, 567 (1983). However, in applying this rule a court must consider the factual circumstances of the particular case. *Tonkovic v. State Farm Mutual Automobile Insurance Co.*, 513 Pa. 445, 453–54, 521 A.2d 920, 924–25 (1987).

In *Tonkovic*, the insured had specifically requested a particular type of coverage and the insurer, after accepting the premium for that coverage, unilaterally limited the coverage provided by excluding the particular coverage sought. Moreover, there was evidence from which the jury could have found that no copy of the policy was ever given to the insured; neither was the policy explained to the insured. Under those circumstances, the court held that the insurer could not enforce the exclusion without making an affirmative showing that the insured was specifically notified of and understood the change. 513 Pa. at 455, 521 A.2d at 925.

In *State Automobile Insurance Ass'n v. Anderson*, 365 Pa.Super. 85, 528 A.2d 1374 (1987), *alloc. granted*, 517 Pa. 624, 538 A.2d 877 (1988) the insured, a farmer, had sought coverage for injury to individuals injured on his farm. The policy provided by the insurer excluded coverage for non-insured farm "employees," but did not define the term "employee". The insured sought coverage for injuries sustained by a family friend who was injured while 'helping out' on the farm. In the absence of any controlling definition of employee contained in the policy, and in light of the community custom of farm neighbors helping one another without compensation, the court found that the insured had a reasonable expectation of coverage under the policy, and that the exclusion was, therefore, not applicable.

In contrast, the court in *Venetian Blind* considered a case in which the insured, a self-employed businessman with a high school education, had purchased a liability policy, telling the agent that he wanted full coverage on everything he owned. 503 Pa. at 303–04, 469 A.2d at 565. Although the insured received a copy of the policy, he did not read it because he relied on the agent to meet his needs. *Id.* Thereafter, he filed a claim for damage to his own property. The policy clearly and unambiguously excluded coverage for damage to the insured's own property. The exclusion was conspicuously displayed and could have been readily comprehended by the insured had he chosen to read the policy. *Id.* at 305, 469 A.2d at 566. The policy limitation

was not shown to be contrary to law, and was of a sort typically found in such a policy. *Id.* at 307, 469 A.2d at 566. Under those circumstances, the court held that the insured could not avoid the consequences of the policy limitation by showing that he failed to read the limitation or did not properly understand it. *Id.* at 307, 469 A.2d at 567.

■ The present case is closely analogous to *Venetian Blind,* and easily distinguished from the cases finding exceptions to the general rule contained therein. The insureds are persons of average intelligence, able to read the English language. They sought a general homeowner's policy, and did not make the agent aware of any special considerations. They never told the agent of the existence of this minibike, and never specifically sought coverage for the bike. They were provided with the standard homeowner's liability policy which they had requested. The exclusion contained in that policy is not unusual in Pennsylvania homeowner's policies. It is not contrary to law or public policy. The exclusion was clear and unambiguous. A copy of the policy was given to the insureds. Although they had every opportunity to read the policy, the insureds chose not to do so.

There is a vast difference between interpreting a written contract broadly so as to afford the greatest possible protection to the insured, and rewriting the contract. *See Venetian Blind,* 503 Pa. at 306, 469 A.2d at 566. The Kulps received the type of coverage requested, but failed to read the policy to discovery the clauses that are the usual incident of the coverage applied for. *See Tonkovic,* 513 Pa. 445, 454, 521 A.2d at 925. Therefore, I must conclude that the general rule of *Venetian Blind* is to be applied in this case.

### Conclusion

For these reasons, I find that there is no coverage under the Kulps' homeowner's policy for claims arising out of the use of a motorized minibike owned by the Kulps off the insured premises. Therefore, summary judgment is granted in favor of the plaintiff and against the defendants. An appropriate order is attached.

### ORDER

Upon consideration of plaintiff's motion for summary judgment, the cross-motion for summary judgment filed by defendant Laurie A. Topper, parent and natural guardian of Timothy L. Topper, a minor, the cross-motion for summary judgment filed by defendants Harrison Kulp and Betty Kulp, the answers, responses and memoranda filed by all parties, and for the reasons stated in the attached memorandum, IT IS ORDERED that:

1. The plaintiff's motion for summary judgment is GRANTED;

2. The cross-motion for summary judgment of defendant Laurie A. Topper, parent and natural guardian of Timothy L. Topper, a minor, is DENIED;

3. The cross-motion for summary judgment of defendants Harrison Kulp and Betty Kulp is DENIED.

It is DECLARED that Motorists Mutual Insurance Company Homeowners Policy Number FH71.499902–00 ("the Policy") does not furnish coverage to Harrison and Betty Kulp with respect to claims arising out of the accident giving rise to Timothy L. Topper's alleged injuries. Judgement is entered in favor of Motorists Mutual Insurance Company and against Harrison and Betty Kulp and Laurie A. Topper, parent and natural guardian of Timothy L. Topper, a minor, with the result that Motorists Mutual Insurance Company is neither required nor obligated under the Policy to defendant in any action that may be brought on behalf of Timothy L. Topper as a result of this incident and with the result that Motorists Mutual Insurance Company is neither required nor obligated under the Policy to defend and/or indemnify Harrison and Betty Kulp in or as a result of any action or award or judgment that may be entered against Harrison and Betty Kulp for monetary damages as a result of this incident.

IT IS SO ORDERED.