J-E02005-14

2015 PA Super 110

| | |
|---|---|
| THERESA M. WOLFE, ADMINISTRATRIX OF THE ESTATE OF KEVIN T. WOLFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROBERT ROSS, | |
| Appellee | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Appellee | No. 1048 WDA 2012 |

Appeal from the Order Entered on June 21, 2012
In the Court of Common Pleas of Butler County
Civil Division at No.: 10-30444

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, J., SHOGAN, J., ALLEN, J., OTT, J., WECHT, J., STABILE, J., and JENKINS, J.

DISSENTING OPINION BY WECHT, J.:               **FILED MAY 07, 2015**

I have the utmost respect for the learned Majority's careful review and application of this Court's three-judge-panel decision in **_Wilcha v. Nationwide Mutual Fire Insurance Co._**, 887 A.2d 1254 (Pa. Super. 2005). However, after careful consideration, I am unable to join the Majority's analysis or conclusion.

I would find that **_Wilcha_** is distinguishable from the instant matter. This case's resolution instead should follow our decision in **_Eichelberger v. Warner_**, 434 A.2d 747, 750-51 (Pa. Super. 1981), and the principles and authorities we relied upon therein.

Today's Majority expands *Wilcha*'s application to new circumstances; circumstances that, in my view, warrant a different result. In so doing, the Majority calls into question this Court's more deeply-rooted precedent embodied by *Eichelberger*. I do not share the Majority's skepticism regarding our reasoning in *Eichelberger*. It is possible to harmonize Pennsylvania's prior cases concerning vehicle exclusion clauses in homeowner's insurance policies more effectively than does the Majority. Were my views to prevail, we would preserve more fully Pennsylvania's enduring commitment to construe ambiguous insurance policy provisions in favor of coverage for the insured. Thus, I respectfully dissent.

The fact pattern and procedural history in this case are straightforward. Theresa Wolfe alleged in the underlying action that, as a direct and proximate result of Robert Ross's provision of alcohol to Wolfe's son ("Decedent"), Decedent departed on a dirt bike owned by Ross's son, lost control of the bike, and struck a fixed object, suffering fatal injuries. *See* Maj. Op. at 2.[1] Before trial, Wolfe and Ross entered into a consent judgment for $200,000, pursuant to which Ross assigned to Wolfe his rights under a homeowner's policy issued by State Farm, which had denied any duty to defend or indemnify under the policy's motor vehicle exclusion.

_____

[1] The Majority aptly notes that "[a]ll allegations against [Ross] sounded in negligence and arose from the furnishing of alcohol to the minor." Maj. Op. at 2.

*Id.* at 3. Thereafter, State Farm waived its right to litigate whether the insured furnished alcohol and whether the alcohol was a legal cause of Decedent's harm; State Farm stipulated that it would remit the policy limits of $100,000 if the court found as a matter of law that it was obligated to provide coverage for Wolfe's claims.

I need not restate in detail the relevant motor vehicle exclusion at issue in this appeal, except to note that, as in most of the cases discussed below, the crux of the matter lies in the meaning of the phrase "arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned or operated by or rented or loaned to any insured." *See id.* at 6-7 (reproducing the relevant policy provisions in full).[2] Accordingly, I turn directly to my reasons for departing from the learned Majority's analysis.

In *Wilcha*, the case that, for the parties and the Majority, is the elephant in the room, a driver brought negligent entrustment claims against the parents of a child with whom the driver collided while the child was operating a motor bike. Faced with a motor vehicle exclusion in their homeowner's policy akin to the exclusion in this case, the parents maintained nonetheless that claims of negligent entrustment and negligent

_____

[2] Unless otherwise noted, the reader may assume that all motor vehicle exclusions addressed in this dissent are, for all relevant purposes, identical in language and scope to the motor vehicle exclusion at issue in this case.

supervision existed independently of the child's use of the motor bike such that the insurer had a duty to defend against the claims.

The Majority's discussion of **Wilcha** warrants reproduction:

[This Court in **Wilcha**] relied upon **Pulleyn v. Cavalier Insurance Corp.**, 505 A.2d 1016, 1020 (Pa. Super. 1986) (*en banc*), where we held that the insurer had no duty to defend a negligent entrustment claim against an employer under a casualty policy [that] contained an exclusion for personal injury arising from maintenance or use of an automobile operated by an employee in the course of his employment. In **Pulleyn**, we reasoned that it was not the negligent entrustment of the vehicle that caused the plaintiff's injuries, but rather the use of the vehicle by the employee that caused the harm.

This distinction was also critical in **Motorists Mutual Insurance Co. v. Kulp**, 688 F.Supp. 1033 (E.D.Pa. 1988), a decision the **Wilcha** Court found to be persuasive. In that case, a minor sustained injury while riding a mini-bike furnished by his aunt and uncle on [an] adjacent property. His parents asserted claims of negligent supervision and entrustment against the aunt and uncle, and they in turn submitted the claims to their homeowner's carrier. The homeowner's policy contained a motor vehicle exclusion that was virtually identical to the one at issue herein. The insurer filed a declaratory judgment action to determine whether the policy provided coverage for the claims. The district court, citing **Pulleyn**, *supra*, held that the motor vehicle exclusion applied and precluded coverage as it was the use of the bike that triggered the insureds' alleged liability, not their negligent supervision or entrustment. In **Wilcha**, we called this reasoning "sound" and "consistent with more recent Pennsylvania jurisprudence." **Wilcha**, 887 A.2d at 1264.

This Court ultimately concluded in **Wilcha** that the homeowner's insurer had no duty to defend the Wilchas on claims for negligent supervision and negligent entrustment. We found no ambiguity in the exclusionary language. Since the minor's injuries arose from use of the dirt bike, the motor vehicle exclusion was applicable.

Maj. Op. at 12-13 (citations modified).

- 4 -

The Majority next discusses at length an unpublished federal opinion in **Allstate Property and Casualty Co. v. Filachek**, Civ. No. 10-3634, 2011 WL 2111219 (E.D.Pa. May 25, 2011) (unpublished). **See** Maj. Op. at 14-16. In that case, which, like **Kulp**, has no more than persuasive value for this Court,[3] the defendant insured, Filachek, spent an evening drinking with his friend Maher, also a named defendant, at several bars. At the last bar they visited, the two men remained until closing. While there, Maher "pounded shots of liquor" in Filachek's presence. **Filacheck**, 2011 WL 2111219, at *1. When the bar closed, Filachek and Maher decided to drive to Atlantic City, with Maher behind the wheel and Filachek in the passenger's seat. Maher, legally drunk by a considerable margin, eventually collided with a car driven by Kap when Maher was traveling at over 100 miles per hour. Kap was killed. **Id.** at *1.

The plaintiff survivor brought suit against the above-named defendants. She alleged that Filachek was liable, *inter alia*, because he

---

[3] This principle applies regardless of whether the case was published. **See generally Pantelis v. Erie Ins. Exch.**, 890 A.2d 1063, 1066 n.3 (Pa. Super. 2006); **Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.**, 704 A.2d 655, 670 & n.3 (Pa. Super. 1997) (adopting the reasoning of the Western District of Arkansas district court's published opinion and rejecting the appellants' reliance upon contrary unpublished decisions of a the Eastern District of Pennsylvania district court). However, that the federal district court declined to publish its decision arguably reduces that decision's value still further. **Cf. Ray v. Dep't of Corrs.**, No. 453 M.D. 2007, 2008 WL 9405086, at *2 n.4 (Pa. Cmwlth. 2008) (unpublished) (rejecting petitioner's reliance upon unpublished federal decisions, noting that the Commonwealth Court may not even cite its own unpublished decisions).

provided alcohol to Maher and encouraged him to drink excessively, did not investigate Maher's fitness to drive, failed to obtain alternative transportation, failed to ensure that Maher operated the vehicle safely, and failed to take over driving when it became clear that Maher was not able to operate the vehicle safely. ***Id.***

Filachek's insurer assumed his defense under a homeowner's policy, but filed a declaratory judgment action contesting its duty to defend on the basis of the policy's motor vehicle exclusion. Notably, the insurer also relied upon a separate policy provision that excluded coverage for "the negligent supervision by any insured person of any person." ***Id.*** at *2 (quoting the policy).

Citing a non-precedential Third Circuit decision and this Court's decision in ***Pulleyn***, the district court found that both exclusions unambiguously applied to bar coverage. ***Id.*** at *3 (citing ***Countryway Ins. Co. v. Slaugenhop***, 360 Fed. App'x 348 (3d Cir. 2010)). Thus, if Filachek was liable, "such liability [was] undeniably intertwined with Maher's use of the vehicle that actually gave rise to the injury. **The vehicle Maher drove was both the instrumentality of the injury and a necessary element in [the plaintiff's] theories of liability against both men**." ***Id.*** at *4 (emphasis added). Consequently, as in ***Wilcha***, the underlying liability claim was defined by reference to the stewardship of the driver in relation to the vehicle's use. Put simply, what was at issue was not Filachek's

supervision of Maher's drinking, as such, but rather his responsibilities as defined by encouraging or permitting Maher to drive while intoxicated.[4]

In ***Eichelberger***, which I find in principle more on point with the instant case despite its divergent fact pattern, Herby Eichelberger, one of several parties injured in a car accident, sued Vivian Warner and the administrator of the estate of Dava Rice, Warner and Rice being the two drivers involved in the accident. The jury found in favor of Eichelberger against both defendants. Warner settled the verdict with Eichelberger in return for an assignment of judgment. Then, Warner filed a praecipe for a writ of execution against Rice's homeowner's and auto insurance policies, issued respectively by Valley Mutual and Federal Kemper. The trial court granted summary judgment in favor of Warner and against Valley Mutual and Federal Kemper. At issue in the subsequent cross-appeals to this Court was whether either or both policies were obligated to cover Rice. ***See*** 434 A.2d at 748.

The facts in ***Eichelberger*** were as follows: Rice was driving her car, with her sister in the passenger seat, when the car stopped running. Rice parked the car as close to the guard rail as possible, but could not remove the car entirely from the lane of travel. Rice and her sister then traveled on

_____

[4] Notably, in ***Filachek***, rather than rely exclusively upon the policy's motor vehicle exclusion, the district court ruled in the alternative that coverage was precluded by the policy provision excluding coverage for "negligent supervision," which has no analog in the instant case.

foot to obtain gasoline, in hopes that the car merely had run out of fuel. When they returned with the gas, two good Samaritans, including Herby Eichelberger, stopped to assist. While the Samaritans prepared to fuel the vehicle, Rice was standing "slightly on the highway behind her vehicle with her back to oncoming . . . traffic." *Id.* at 749. Just then, Warner was approaching in the partially obstructed lane. As Warner neared the disabled vehicle, Rice stepped backward into Warner's path. Warner struck Rice, lost control of her car, and ran into the rear of Rice's vehicle, killing Rice and injuring both Samaritans. A jury found that Warner and Rice both had been negligent. *Id.* at 748-49.

Because our Supreme Court previously had held in ***Morris v. American Liability and Surety Co.***, 185 A. 201 (Pa. 1936), that "'maintenance' as used in the context of an automobile insurance policy includes all acts [that] come within the ordinary scope and meaning of the word," we found it "inescapable that the replacement of fuel [that] has been exhausted with use[,] and without which a motor vehicle is inoperative, is a species of maintenance." ***Eichelberger***, 434 A.2d at 750 (quoting ***State Farm Mut. Ins. Co. v. Pan Am. Ins. Co.***, 437 S.W.2d 542, 545 (Tex. 1969)). Notwithstanding that Rice had been deemed negligent in stepping into Warner's path, we found that Rice's auto insurance policy was obligated to provide coverage because "a cause and result relationship is enough to satisfy the 'arising out of' provision of an automobile insurance policy." ***Id.***

Rice's negligent act was not "so remote from the ownership, maintenance or use of her vehicle as to be unconnected with them." ***Id.***

Turning to Rice's homeowner's policy, we noted that, as in the case *sub judice*, it excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned or operated by or rented or loaned to any insured." ***Id.*** Our explanation as to why this deployment of materially identical language—*i.e.*, "arising out of"—led to different results *vis-à-vis* the auto and insurance policies is instructive:

> [C]overage clauses are interpreted broadly so as to afford the greatest possible protection to the insured. ***Mohn v. Am. Cas. Co. of Reading***, 326 A.2d 346 (Pa. 1974); ***Penn-Air Inc. v. Indem. Ins. Co. of N. Am.***, 269 A.2d 19 (Pa. 1970); ***Miller v. Prudential Ins. Co. of Am.***, 362 A.2d 1017 (Pa. Super. 1976) (*en banc*); ***Celley v. Mut. Benefit Health & Accident Ass'n***, 324 A.2d 430 (Pa. Super. 1974) (*en banc*). These rules of construction are necessary because, as this [C]ourt has noted, insurance policies are in essence contracts of adhesion. ***Ranieli v. Mut. Life Ins. Co. of Am.***, 413 A.2d 396 (Pa. Super. 1979).[5] Because of these canons of construction, it must be emphasized that a homeowner's policy and an automobile policy are not necessarily mutually exclusive. ***See State Farm Mut. Auto Ins. Co. v. Partridge***, 514 P.2d 123 (Cal. 1973) (even though inclusionary clause of homeowner's policies and exclusionary clause of automobile insurance policies held by the insured had both been issued by the same insurer and contained nearly identical language, such policies were held not to be mutually exclusive)[.] As one treatise states:

_____

[5] ***See also Adamitis v. Erie Ins. Exch.***, 54 A.3d 371, 380 (Pa. Super. 2012) (noting that ambiguous provisions should be interpreted in favor of the insured because "the insurer drafts the policy[] and controls coverage").

(S)ome courts and writers have confused further the problem of the use of the automobile with the exclusionary clauses of the homeowner personal comprehensive liability and general liability policies. They have focused attention on the exclusions rather than on the insuring agreements. The insuring agreements of the policies are not the same. The automobile policy agrees to pay all damages '* * * arising out of the * * * use of the automobile' whereas the general liability policy agrees to pay all damages '* * * arising out of an occurrence[.']  The exclusion of the general liability policy seems to suggest that if the loss arises out of the 'use' of an automobile away from the premises it is excluded. However, such a view ignores the insuring agreement on the different policies, and the fact that one focuses on an occurrence and the other on the automobile. And they are not mutually exclusive. The court has a legitimate interest in determining whether the use of the automobile was the 'occurrence' [that] produced the liability. **Clearly, if the 'use' of the automobile was only incidental to the event that produced liability it should not be an excluded event under homeowner or general liability policies.**  And, as a California court has stated, the courts will give broad construction to the coverage provisions but strict construction to the exclusions. Thus, there are cases that provide coverage under the homeowner's policy in the absence of a causal connection between the use of the vehicle and the accident.

The exclusions of the general liability and homeowner policies and the insuring agreement of the automobile policy are not mutually exclusive and recovery can be had under both polices.

[7A Appleman, Ins. Law & Practice, § 4500 (1979)]

***Eichelberger***, 434 A.2d at 751-52 (citations modified; footnote omitted; emphasis added).

We then turned to examine the California Supreme Court's decision in

***Partridge***, *supra*:

In **Partridge**, the Supreme Court of California was asked to construe the same language as that which is now before our Court, *i.e.*, "arising out of the use" of an automobile. As in the case *sub judice*, this language in **Partridge** was contained in both the inclusionary clause of an automobile policy held by the insured and in the exclusionary language of the homeowner's policy. The **Partridge** court said:

> In view of the (different canons of construction) the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within the similarly worded exclusionary clause of a homeowner's policy. (citations omitted)

**Partridge**, 514 P.2d at 128.

In **Partridge**, the [c]ourt was faced with a situation where the insured had committed two negligent acts [that] jointly caused the accident. The insured in **Partridge** had modified a gun by filing the trigger so that it had a "hair" trigger. The insured took this gun with him in his vehicle when he went to hunt jackrabbits. At the time of the accident, the insured intentionally drove his vehicle off the paved road and onto . . . bumpy terrain. The gun accidentally discharged, injuring the passenger. The issue in **Partridge** was whether the insured's homeowner's policy, in addition to the insured's automobile policy, covered this accident. We recognize that the **Partridge** case is factually different from the instant case and that the court did find that both policies covered the accident for the reason that there were two joint causes to the accident[,] one auto-related and one non-auto[-]related. Nonetheless, it should be noted that the **Partridge** Court said that "liability under the homeowner's policy could possibly be predicated upon the ambiguity of the exclusionary clause in the context of the instant accident . . . ." ***Id.*** at 129. Such an ambiguity exists under the facts of the present case. The exclusionary clause, although it says that the policy does not apply to bodily injury "arising out of" the ownership, etc., of any motor vehicle, does not state whether such injury must be proximately caused by the auto or simply causally connected with the auto. . . . [W]e hold that for purposes of an exclusionary clause, when the words "arising out of" the use of an automobile are read strictly against the insurer, then it must be concluded that this clause acts to exclude only

those injuries [that] are proximately caused by the automobile. This interpretation is consistent with the general rule that insurance policies are read to effect the policy's dominant purpose of indemnity or payment to the insured.

***Eichelberger***, 434 A.2d at 751-52 (citations modified).

Nor is this the only aspect of ***Partridge***, which this Court in ***Eichelberger*** clearly endorsed and adopted in part, that warrants consideration. In ***Partridge***, "State Farm contended that because the use of the car played some causal role in the accident in question, the injuries 'arose out of the use of the car' within the meaning of the homeowner's exclusionary provision." ***Id.*** 514 P.2d at 126. The ***Partridge*** court rejected that argument:

Here the "use" of Partridge's car was not the sole cause of Vanida's injuries but was only one of two joint causes of the accident. Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship [that] would normally bring the exclusionary clause into play, **the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants correctly contend that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy.**

\* \* \* \*

In the instant case, . . . **although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries**. Under these facts the damages to Vanida are, under the language of the homeowner's coverage clause, "sums [that] the Insured . . . [became] legally obligated to pay" because of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from his non-auto-

- 12 -

related conduct, and exists independently of any "use" of his car, we believe the homeowner's policy covers that liability.

*Id.* at 129 (emphasis added).

Heavily relying upon the reasoning set forth in **Partridge**, and in light of the ambiguity we found in the vehicle exclusion, in **Eichelberger**, we found that coverage would lie. Although the use of the vehicle was a factual or "but-for" cause of the accident, the exclusion did not in unambiguous terms bar coverage when an "occurrence" that, standing alone, would incur coverage played a proximately causal role in the harm upon which the suit was based.[6] **Cf. Penn-Am. Ins. Co. v. Peccadillos, Inc.**, 27 A.3d 259, 265 (Pa. Super. 2011) (*en banc*) (holding that provision of alcohol exclusion did not preclude the duty to defend where, among alcohol-related allegations that clearly were excluded, the plaintiff also stated a claim for improperly ejecting intoxicated patron when bar staff knew or should have known that the plaintiff would attempt to drive).

_____

[6] At least one court has read **Eichelberger** as I do. **See Kalell v. Mut. Fire & Auto Ins. Co.**, 471 N.W.2d 865, 867-69 (Iowa 1991) (reviewing **Eichelberger** at length and finding that coverage would lie for damages arising from pulling a tree limb down by attaching it to a motor vehicle, because the removal of a tree limb was "an independent act of negligence and one [that] is covered by the policy," holding that, "when two independent acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowner['s] policy unless the vehicle-related negligence is the sole proximate cause of the injury").

It is worth noting that Pennsylvania courts long have recognized "concurrent causation" in the context of joint and several liability, holding that "multiple substantial factors may cooperate to produce an injury." *Harsh v. Petroll*, 887 A.2d 209, 218 (Pa. 2005). Moreover, *Partridge*'s concurrent causation approach has been adopted in some form by a considerable number of our sister states.[7]

_____

[7] *See Scottsdale Ins. Co. v. Nguyen*, 763 P.2d 540 (Ariz. Ct. App. 1988) (finding coverage where house-moving company employee was electrocuted when, during moving of house, it came into contact with power line spanning street); *U.S. Fid. & Guar. Co. v. State Farm Mut. Auto. Ins. Co.*, 437 N.E.2d 663 (Ill. App. Ct. 1982) (finding coverage where child was expelled from vehicle operated by day care because other acts of negligence were asserted against day care); *Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865 (Iowa 1991) (finding that coverage may lie where injury arose from using pick-up truck to pull down tree limb); *Lejeune v. Allstate Ins. Co.*, 365 So. 2d. 471, 479 (La. 1978) (finding coverage where sheriff driving with funeral cortege failed to secure intersection because "the decisions [the court] could find hold that, where the automobile use exclusion clause is sought to be applied so as to avoid coverage for injuries otherwise covered by a general liability policy, the exclusion clause does not apply where the insured's act is a result of negligence independent of, even though concurring with, his use of an automobile"); *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 923 (Minn. 1983) (finding homeowner's coverage when insured caused a fire while driving smoldering garbage to landfill: "where act of placing live embers in the uncovered barrels was a cause of the fires, homeowner's policy afforded coverage for the risk, without regard to intervention of the contributing cause consisting of use of the truck"); *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887 (Tenn. 1991) ("[T]here should be coverage in a situation . . . where a non[-]excluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion . . . ."); *see also Wallach v. Rosenberg*, 527 So.2d 1386, 1388 (Fla. 3d Dist. Ct. App. 1988) (quoting Couch, 11 Couch on Insurance 2d § 44:268 (rev. ed. 1982)) (finding a jury question regarding coverage under all-risk policy where

*(Footnote Continued Next Page)*

In my view, the best way to reconcile *Eichelberger* with *Wilcha* is to recognize that the gist of all of the claims in *Wilcha*, *Filachek*, *Pulleyn*, and most of the other cases cited by the Majority addressed failures of supervision or entrustment directly associated with the use or operation of a vehicle.  In these cases, not only did the accident result from the use or operation of the vehicle, but the underlying tort claim could not be separated from the vehicle's operation.  In none of those cases did the act of negligence at issue entirely precede the introduction of a motor vehicle into

*(Footnote Continued)* ———————————

weather combined with negligence to cause loss because policy did not "contain[] a provision [that] specifically exclude[d] coverage where a covered and an excluded cause combine to produce a loss," and noting that such coverage may lie even when the insured risk is not "the prime or efficient cause of the accident"), *disagreed with by American Home Assurance Co., Inc., v. Sebo*, 141 So.3d 195 (Fla. 2d Dist. Ct. App. 2013), *review granted by Sebo v. Am. Home. Assur. Co., Inc.*, No. SC14-897, 2014 WL 5093402 (Fla. Oct. 7, 2014); *Braxton v. U.S. Fire Ins. Co.*, 651 S.W.2d 616, 619-20 (Mo. Ct. App. 1983) (finding coverage under comprehensive property policy containing exclusion for harm "arising out of the ownership or use of any firearm" where underlying claim was for negligent supervision of employee who shot and injured customer); *Houser v. Gilbert*, 389 N.W.2d 626, 630-31 (N.D. 1986) (holding that vehicle insurer and farm liability insurer must share *pro rata* in judgment where vehicle-related act of negligence and non-vehicle-related act of negligence were involved in truck accident caused by mud carried onto highway by insured's vehicle); *S. Burlington v. Am. Fid. Co.*, 215 A.2d 508 (Vt. 1965) (finding duty to defend despite "streets and sidewalks" exclusion, where injuries arose from negligent maintenance of culvert that caused plaintiff's car to fall into sinkhole in road); *Lawver v. Boling*, 238 N.W.2d 514, 521 (Wis. 1976) (finding that, when "a covered risk and an excluded risk concurred in causing injury," it is "apparent that the insurer . . . is not being held to provide coverage for a risk [that] it did not contemplate and for which it received no premium").

the events precipitating the injury—or, as in *Eichelberger* and *Partridge*, work in tandem with, but independently of, the vehicle's use—such as the provision of alcohol based upon which Wolfe asserts Ross's liability in the instant matter.

The Majority dismisses this distinction with little discussion:

> [Wolfe] attempts to distinguish *Filachek* as involving claims that a passenger "negligently plied the driver with alcohol and then negligently supervised the intoxicated driver's operation of the vehicle[.]" [Wolfe's] Supplemental Brief at 8. . . . [Wolfe] simply ignores the express language of the exclusion that focuses on whether the motor vehicle was the cause of the injury, not whether the insured's conduct giving rise to liability arose out of [the] use of a motor vehicle. The fact that the serving of alcohol to a minor subjected [Ross] to liability even without the involvement of a motor vehicle does not change the fact that the policy language excludes coverage for injuries arising out of use of a motor vehicle. It is undisputed that the decedent's use of the [dirt bike] was both the proximate cause and the cause in fact of the injury. We find no ambiguity in the exclusionary language on the facts herein.

Maj. Op. at 16.

This analysis is irreconcilable with our reasoning in *Eichelberger*, which, unlike *Wilcha*, *et al.*, involved an assertion of coverage based upon a negligent act—stepping in front of Warner's vehicle—that might have been associated with the use of the automobile but was not inextricable from that use, as would be the case in a claim for negligent entrustment or supervision. Indeed, the Majority's rejection of Wolfe's argument would have required the contrary result in *Eichelberger*: There, also, we arguably "simply ignore[d] the express language of the exclusion that focuses on

whether the motor vehicle was the cause of the injury, not whether the insured's conduct giving rise to liability arose out of [the] use of a motor vehicle." Maj. Op. at 16. And it is telling that the "express language" of the motor vehicle exclusion in the instant matter does not address causation head-on, rendering it as ambiguous on this point as we deemed it to be in *Eichelberger*.[8]

The distinction between *Eichelberger* and *Wilcha* is highlighted implicitly by the Majority's failure to cite any case in which the same or a similar motor vehicle exclusion was deemed unambiguously to exclude coverage that did not sound substantially in negligent supervision or entrustment, or in some equivalent circumstance where the insurance excluded coverage for an otherwise covered cause that was inextricably

---

[8] Notably, the court in *Lawver*, *supra*, interpreted *Partridge* as relying not upon ambiguity in resolving the case in favor of coverage but, in a stronger determination, that it suffices that one covered risk independently contributes to the injury because that risk expressly is covered by the policy. *See Lawver*, 238 N.W.2d at 521-22. We acknowledged as much in *Eichelberger*, but opted for the more restrained course of ruling that the language in question was ambiguous. *Eichelberger*, 434 A.2d at 752 (quoting *Partridge*, 514 P.2d at 129) ("We recognize that the *Partridge* case is factually different from the instant case and that the court did find that both policies covered the accident for the reason that there were two joint causes to the accident[,] one auto-related and one non-auto[-]related. Nonetheless, it should be noted that the *Partridge* Court said that 'liability under the homeowner's policy could possibly be predicated upon the ambiguity of the exclusionary clause in the context of the instant accident . . . .'").

intertwined with an excluded cause.[9] It warrants emphasis that whether an insurance contract is ambiguous must be assessed in context; what is unambiguous in one circumstance may nonetheless be ambiguous in another. *See generally Eichelberger*, 434 A.2d at 750-51. Thus, it is by no means untenable to maintain that the motor vehicle exclusion requires a

---

[9] *See, e.g.*, Maj. Op. at 23-26 (citing *Farmers Ins. Exch. v. Super. Court*, 163 Cal. Rptr. 3d 609 (Cal. App. 2013) (finding no coverage for negligent operation of truck by homeowner who ran over and killed granddaughter); *Prince v. Un. Nat'l Ins. Co.*, 47 Cal. Rptr. 3d 727 (Cal. App. 2006) (finding no coverage under foster mother's homeowner's policy where she left children in hot car and they died); *Belmonte v. Employers Ins. Co.*, 99 Cal. Rptr. 2d 661 (Cal. App. 2000) (finding no coverage for negligent supervision where the child's injurious use of a van constituted the single proximate cause of the injuries); *Gurrola v. Great S.W. Ins. Co.*, 21 Cal. Rptr. 2d 749 (Cal. App. 1993) (finding no coverage where the claimed negligent welding of a vehicle was intertwined with the use of the motor vehicle that led to injury); *Nat'l Am. Ins. Co. v. Coburn*, 257 Cal. Rptr. 591 (Cal. App. 1989) (finding no coverage where parents failed to set parking brake while loading vehicle and a child moved the gear lever out of "park"); *see also U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201 (Ohio App. 1998) (finding no coverage under malpractice exclusion for a claim of negligent credentialing because, like negligent entrustment of vehicle, the malpractice was necessary to, rather than independent of, the harm)). The Majority cites the above litany of California cases in an effort to establish that, even under *Partridge*, Wolfe would not be entitled to coverage, reading them either as abrogating *Partridge* or limiting it in such a way as to preclude coverage under the instant facts. *See* Maj. Op. at 23-25. But as the above parenthetical descriptions make clear, none of the cited cases involved independent, non-vehicular causes like the filing of the trigger mechanism in *Partridge* or the provision of alcohol in the instant case. Indeed, post-*Partridge* cases cannot fairly be said to have abrogated or diminished that case. Rather, these cases reinforce my view that entrustment and supervision cases can be distinguished on a principled basis from cases like the matter before us, where the vehicle served as the instrument of an injury that arose from vehicle-independent tortious conduct.

different result in an entrustment case than in a case of concurrent or independent causation.

The Majority distinguishes **Eichelberger** on the basis that it "rested upon very different facts," Maj. Op. at 8, from those in the instant case. However, after reviewing that case, **id.** at 8-10, the Majority offers no material comment as to how those factual differences lead the Majority to conclude that this Court should favor **Wilcha** and **Filachek**, a non-binding federal case that essentially echoed **Wilcha**, over our earlier decision in **Eichelberger**. Specifically, the Majority does not effectively distinguish **Eichelberger**'s conclusion that an exclusion materially identical to the exclusion in the instant case was ambiguous, and thus must be read in favor of the insured, because the policy did not specify whether the phrase "arising out of" applied both when the vehicle was an incidental or factual cause of the accident **and** when the vehicle was the proximate cause of the accident. Indeed, rather than distinguish **Eichelberger** from the instant case, the Majority seems to rely upon the proposition that we should favor **Wilcha** merely because it is more current than **Eichelberger**. **See** Maj. Op. at 11 (observing that **Wilcha** and **Filachek** were "decided decades after **Eichelberger**"). However, as one justice of our Supreme Court recently observed, a court "should not frustrate the fundamental principles of *stare decisis* by overturning a case that does not contravene the doctrinal underpinnings of our existing precedent and is not factually similar in regard to several crucial aspects [of] the case at bar." **Commonwealth v. Moore**,

103 A.3d 1240, 1255 (Pa. 2014) (Baer, J., concurring). I would not declare the desuetude of an older case when a principled distinction from subsequent cases provides ample explanation for the cases' disparate outcomes.

The Majority also rejects Wolfe's invitation to adopt the reasoning of the New Jersey Supreme Court in **Salem Group v. Oliver**, 607 A.2d 138 (N.J. 1992). **See** Maj. Op. at 18-20. In **Salem Group**, the minor plaintiff was injured while operating the insured's ATV after the insured had given him alcohol. The court found that the insurer at least was obligated to defend the social host liability claims these events engendered:

> No one disputes that insurers are generally obligated to defend their insureds on social host claims. The critical question is whether the insurer can avoid that obligation because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constitutes an additional cause of the injury. We find that the insurer remains obligated to defend the covered risk. It may not avoid that obligation simply because the operation of an ATV constitutes an additional cause of the injury.
>
> * * * *
>
> It is not at all clear that the exclusion for the operation of an ATV is to apply when the insured provides liquor to the victim, who then drives the insured's ATV. Arguably, the exclusion does not apply in that context. When a policy fairly supports an interpretation favorable to both the insured and the insurer, the policy should be interpreted in favor of the insured.
>
> A contrary conclusion could defeat the reasonable expectations of the insured, which should be respected to the extent the policy's language allows. In certain contexts, if Newman had provided an ATV, alcoholic beverages, or both, the policy apparently would cover a resulting accident. Arguably, if the accident had occurred while [plaintiff] was driving the ATV on [the insured's] property, [the insured] would be covered. Or if

- 20 -

[the insured] had provided [plaintiff] with alcohol and the accident had occurred while [plaintiff] was driving another's ATV, [the insured] arguably would be covered. Given those possibilities and the wording of the exclusion, [the insured] could reasonably expect that the policy would cover him when he provided both the ATV and the alcoholic beverages that contributed to the causation of an accident not on [the insured's] property.

*Id.* at 139 (citations omitted).[10] Notably, the New Jersey Supreme Court rejected the insurer's reliance upon two New Jersey precedents finding no coverage on the basis that those cases, unlike *Salem Group*, presented negligent entrustment or supervision claims inextricably intertwined with the operation of a vehicle. *Salem Group*, 607 A.2d at 139. The court held that "[t]hose opinions proceed[ed] on the assumption that negligent entrustment or supervision of a motor vehicle is intertwined with the ownership and operation of the motor vehicle. . . . In contrast, the serving of alcohol to a minor does not depend on the insured's ownership of a motor vehicle or its entrustment to another." *Id.* at 140.

The Majority makes much of the fact that at issue in *Salem Group* was the insurer's duty to defend the claim, not its obligation to provide coverage. *See* Maj. Op. at 19-20. While the Majority is correct that the duty to defend is broader than the duty to indemnify, *see Peccadillos*, 27

_____

[10] *Cf. Lawver*, 238 N.W.2d at 521 (holding that "the insurer . . . is not being held to provide coverage for a risk [that] it did not contemplate and for which it received no premium").

A.3d at 265,[11] the duty to defend found in **Salem Group** was based expressly (and necessarily) on its recognition that coverage **might** lie under the facts of that case.  Despite its qualification that it "h[e]ld not that the insurer may ultimately be liable under the policy, but only that it must honor its duty to defend," **Salem Group**, 607 A.2d at 140—an observation merely rooted in the question there presented—the court, in finding a duty to defend, necessarily found that coverage **could** lie.  **See also Peccadillos**, 27 A.3d at 265 ("The obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy.").  It would be nonsensical and contrary to law to grant the insured a defense if a finding in favor of coverage on the facts as pleaded was not perceived to be a plausible legal outcome.[12]  Moreover, the **Salem Group**

_____

[11]    As noted, *supra*, in **Peccadillos**, somewhat reinforcing **Eichelberger**'s guiding principle, this Court, sitting *en banc*, found that the insurer owed a defense to a bar where some claims clearly fell within the policy's alcohol exclusion but at least one claim—that the bar improperly ejected an intoxicated patron when it knew or should have known that he would drive—was not included expressly excluded by the policy.

[12]    The Majority relies upon **Flomerfelt v. Cardiello**, 997 A.2d 991 (N.J. 2010), to reinforce the proposition that **Salem Group**, in finding only a duty to defend when that was the only question presented, somehow implied a refusal to grant coverage in an appropriate, factually similar case, but leaves out that **Flomerfelt** lent considerable support to my less restrained reading of **Salem Group**.  Therein, the court observed, regarding New Jersey law, that "[i]n situations in which multiple events, one of which is covered, occur sequentially in a chain of causation to produce a loss, we have adopted the approach known as 'Appleman's rule,' pursuant to which the loss is covered if a covered cause starts or ends the sequence of events leading to the loss."  997 A.2d at 1000 (citing, *inter alia*, **Auto Lenders**
*(Footnote Continued Next Page)*

court, in its repeated allusions to alternative but closely similar scenarios that would lead to coverage and its emphasis upon the reasonable expectations of the insured, strongly suggested that it was merely exercising restraint in not reaching the question of coverage prematurely, not that it believed an obligation to defend existed despite a negligible likelihood of coverage being found under the circumstances of that case, which resemble the facts and circumstances *sub judice* far more closely than any other case cited herein or by the Majority.

In short, I find the learned Majority's dismissal of this case on that basis alone to be a red herring. The Majority's entire response to **Salem Group**, including that case's discussion of and reliance upon **Partridge**, is to treat as dispositive the distinction between determining whether an insurer owes a defense or coverage to an insured. This does not actually provide any assessment of **Salem Group**'s soundness in its distinction between negligent supervision/entrustment claims from those in which two independent causes, one covered and one excluded, lead to injury. If **Salem Group** found, as I would, that the distinction may change the outcome in the context of the duty to defend, then it also found **in principle** that the distinction might, in an appropriate case, also change the outcome

*(Footnote Continued)* ───────────────

**Acceptance Corp. v. Gentilini Ford, Inc.**, 854 A.2d 378 (N.J. 2004) (quoting 5 Appleman, Insurance Law & Practice § 3083 at 309-11 (1970))). Under that rule as stated, it seems more than likely that a New Jersey court would find coverage under the facts *sub judice*.

as to coverage.  The Majority freights this distinction with more weight than it can bear.

In any event, **Salem Group**, like **Partridge**, merely provides guidance; it is unnecessary to reach the same result in this case (with respect to coverage rather than defense).  **Eichelberger** and **Wilcha** suffice to require us to recognize that a case hinging upon negligent entrustment or supervision presents a circumstance legally distinct from a case in which the claims are based upon a cause that is antecedent to or concurrent with, and independent of, subsequent events that link that cause to the ultimate injury.

In this regard, **Wilcha**, itself, lends support to my view:

> The fatal weakness of the appellants' contention for coverage lies in its failure to acknowledge one of the elements essential to recovery for negligent entrustment—the negligent operation of the motor vehicle . . . .
>
> The plain wording of the exclusionary provision reveals the deficiency in this rationale.  While liability (apart from coverage) for negligent entrustment is not conditioned upon the entrustor's ownership or use of the vehicle, negligent use by the one to whom it is entrusted is essential to recovery.  **It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by the entrustee— that is missing in the rationale of those cases upholding coverage.**  Taken literally, [under] this line of reasoning—that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability—the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have already observed, this does not comport with the elements that make up this tort concept of negligent entrustment.

*Wilcha*, 887 A.2d at 1263 (quoting *Erie Ins. Exch. v. Transam. Ins. Co.*, 507 A.2d 389, 396 (Pa. Super. 1986), *reversed on other grounds*, 533 A.2d 1363 (Pa. 1987)) (emphasis added).  In short, *Wilcha* limited its own scope based upon the very distinction that I would recognize in preserving *Eichelberger* and applying it in this case.[13]

In this case, no element of the claim asserting that Ross negligently provided alcohol to Wolfe's decedent inherently required the involvement of a motor vehicle to result in liability.  Rather, it required only harm arising from the provision of alcohol.  Decedent might have fallen from a window or down a flight of stairs.  He might have walked in front of speeding traffic in front of the house or fallen asleep in a full bath tub.  And, perhaps most relevantly, Decedent might have injured himself in an accident while operating his own vehicle after leaving Ross's house.  All things being equal, any of those scenarios may have resulted in coverage, provided that the instrument or vehicle in question did not belong to Ross.  It beggars belief that a materially identical scenario would not require coverage—and as a practical matter in cases in which the defendant is insolvent or otherwise judgment-proof, present the risk of little or no recovery by the injured

---

[13]   At a minimum, *Wilcha* expressly excludes from its ambit (and without criticism) cases that do not feature the substantive intertwining of the vehicle and the underlying negligence claim that is characteristic of supervision and entrustment claims.  This, in turn, highlights that the Majority's application of *Wilcha* would expand its scope at the expense of *Eichelberger*.

plaintiff—simply by virtue of which instrumentality connected Decedent's inebriation to the injury. **See Salem Group**, 607 A.2d at 139-40 (finding similar potential anomalies of coverage at odds with the insured's reasonable expectations).

To be clear, the automobile exclusion at issue in this case reasonably can be read to preclude coverage in this case. However, a clause is ambiguous when another reasonable reading leads to a contrary result. **Adamitis v. Erie Ins. Exch.**, 54 A.3d 371, 380 (Pa. Super. 2012) (quoting **Kropa v. Gateway Ford**, 974 A.2d 502, 508 (Pa. Super. 2009)) ("The provisions of an insurance contract are ambiguous if its terms are subject to more than one reasonable interpretation when applied to a particular set of facts.").[14] As in **Eichelberger**, I would find that the exclusion at issue reasonably may be read to exclude coverage only in cases where the use of the automobile was intrinsic to the asserted tort, rather than serving as an independent cause of the injury. In so doing, my views are in harmony with the restrained application of **Partridge** ventured in **Eichelberger**—that the exclusion does not apply because it is ambiguous.

_____

[14] **Cf. Madison Constr. Co. v. Harleysville Mut. Ins.**, 735 A.2d 100, 110 (Pa. 1999) (Cappy, J., dissenting) (finding ambiguity in the phrase "arising out of" as used in a pollution exclusion provision with regard to "whether the phrase requires merely a causal relationship (*i.e.*, a 'but for' relationship), or a proximate cause relationship").

*Eichelberger*, *Partridge*, and *Salem Group*, in their assessments of what constitutes an independent tort that requires coverage notwithstanding the operation or use of an automobile, more closely align with the relevant facts of the instant case than do *Wilcha*, *Filachek*, or any of the other cases relied upon by the Majority. Consequently, I would find that the vehicle exclusion policy as applied to this case is ambiguous, and must be construed in favor of the insured. I respectfully dissent.